MELVIN SCHNEITER, BY FRED SCHNEITER, NEXT FRIEND, APPELLANT, v. CITY OF CHILLICOTHE, RESPONDENT.—107 S. W. (2d) 112.

Kansas City Court of Appeals. May 24, 1937.

*Owen & Thurlo, W. A. Franklin, Clif Langsdale* and *Charles V. Garnett* for appellant.

*Robert C. Frith, S. J. & G. C. Jones, Randall R. Kitt* and *Paul D. Kitt* for respondent.

REYNOLDS, J.—This is an action for damages for personal injuries. The trial court sustained defendant's general demurrer to the plaintiff's petition. The plaintiff, electing to stand upon his petition, declined to plead further; and the trial court thereupon entered judgment against him. From that judgment, the plaintiff prosecutes this appeal.

The plaintiff, Melvin Schneiter, is a boy who was nine years of age at the time this suit was filed. He sues by his father as next friend. The defendant, City of Chillicothe, is a municipal corporation and, under its proprietary powers, owns and operates the electric lighting and power system in the city of Chillicothe.

The petition alleges that the defendant maintains a high tension line carrying 2300 volts along one of the streets of Chillicothe; that this line crosses Walnut Street diagonally; that, on or about March—, 1935, and for a long time prior thereto, the wires of this line were, by the negligence and carelessness of the defendant, suffered and permitted to be and become defective and dangerous in that the insulation had become rotten, worn, ragged, and so defective that it would not prevent the escape of electric current therefrom; that the wires had negligently been permitted to become loose and to sag down over said intersection; and that such defective conditions had existed for such a length of time that the defendant knew, or by the exercise of due and proper care could and should have known, of all of said conditions in time to have remedied them.

It is further alleged that south of the intersection in question and adjacent thereto is a large lot or commons which had for a long time been used by the children in the neighborhood thereof as a play ground; that one of the sports frequently indulged in by them is the flying of kites; that a number of children, for a long period of time, flew kites there and frequently used small wire, string, or other substances as a cord or line for flying their kites and often flew them on rainy days; and that the kites' strings so used were, or might become, conductors of electricity.

It is alleged that the plaintiff, in March, 1935, was playing on said commons and intersection and was flying a kite by means of a string or line attached thereto which was in a condition to act as a conductor of electricity and that his kite string came in contact with the defendant's defectively insulated wires and, as the direct and proximate result thereof, the electric current escaped therefrom and upon and along the string or line attached to the kite and into and through the plaintiff, inflicting upon him severe electric shocks and burns and thereby severely and permanently injuring him.

The petition alleges that the defendant was guilty of the following acts of negligence:

"That the defendant negligently and carelessly permitted said wires, charged with and carrying electrical current of high, deadly and dangerous voltage to become and continue to be so defectively insulated as to permit said electrical current to escape therefrom.

"(b) That defendant negligently and carelessly caused, suffered or permitted the insulation of its electrical wires aforesaid to be and become rotten, worn, ragged and so defective that it would not prevent the escape of said electrical current therefrom.

"(c) That defendant negligently and carelessly caused, suffered or permitted the said wires carrying said electrical current to sag down over said intersection and to be and remain so close to the surface of said intersection as to be dangerous to those lawfully upon and along the surface of said intersection, including this plaintiff, and subjecting plaintiff and others so situated to the likelihood of injury from escape of electrical current therefrom.

"(d) That by reason of the fact that said electrical wires were designed and intended by the defendant to carry an electrical current of a voltage of 2300 volts, more or less, it was, at all times herein mentioned the duty of defendant to give due notice to those lawfully upon and along said intersection, including this plaintiff, of the voltage carried by said electrical wires and the dangers incident thereto; that notwithstanding such duty, defendant negligently and carelessly failed to post, place or give any warning of the dangers incident to contact with said electrical wires.

"(e) That defendant knew, or by the exercise of the proper degree of care, could and should have known of the defective and dangerous condition of said electrical wires in all of the particulars herein alleged, in time thereafter, by the exercise of the proper degree of care, to have repaired the same and eliminated the danger of the escape of electrical current therefrom to the possible injury of those upon and along said intersection, including the injuries aforesaid to this plaintiff.

"(f) That the defendant, knew, or by the exercise of the proper degree of care, could and should have known of the habits of children playing in and about said commons and intersection as aforesaid, and of the likelihood of kite strings or lines or substances conducting electricity from said wires by reason of their dangerous and defective condition in each and all of the particulars herein alleged and of the consequent danger to children coming in contact with or being injured by said wires as aforesaid, in time, by the exercise of the proper degree of care, to have remedied or corrected the same before the plaintiff was injured as herein alleged, but negligently failed to do so."

The petition then alleges that the electric shocks and burns which he suffered were directly and proximately caused by the negligence and carelessness of the defendant in each and every particular set forth in the petition and that, by reason of such negligence and as the direct and proximate result thereof, the plaintiff was injured in the particulars set forth in the petition, which need not here be detailed.

The prayer of the petition is for the recovery of $7500 damages.

The defendant's demurrer, which the court sustained, is based on two grounds. The first challenges the capacity of the plaintiff to

maintain the suit. The second is that the petition fails to state facts sufficient to constitute a cause of action.

It is sufficient to state with reference to the first ground that it is not briefed or insisted upon here and may be considered as abandoned.

The only question, therefore, upon this appeal, is whether the petition states a cause of action and whether the demurrer thereto was properly sustained.

(1) The petition appears to be based upon the theory that—the defendant having knowledge of the fact that children used that part of the street over which its wires passed together with the commons adjacent thereto for a playground from which they flew kites with strings or cords attached which they held in their hands while flying such kites—the defendant owed to the plaintiff as a member of such class the duty of so insulating and protecting its wires as to prevent the escape of electric fluid therefrom and of so maintaining them in such condition or of so placing said wires at such points that the plaintiff would be protected from injury by reason of any direct contact with them while upon that part of the street or adjacent commons flying his kite therefrom or by reason of any indirect contact with them or with the electric fluid escaping from them into the string or cord attached to his kite coming in contact with them and that the defendant, in failing properly to insulate its wires or to place them beyond any point of contact, directly or indirectly made, breached its duty and is therefore liable to the plaintiff for the injuries consequent to him from the contact of said string or cord with such wires.

It alleges the negligence of the defendant in permitting the wires surcharged with electric current to become and continue to be defectively insulated; in suffering and permitting the insulation of said wires to become and remain rotten, worn, and ragged so that it would not prevent the escape of electric current; in permitting said wires to sag down and to be and remain so close to the surface of the street over which they passed as to be dangerous to those lawfully upon such surface, including the plaintiff, and submitting the plaintiff and others to the likelihood of injury from the escape of electric current from them or from contact therewith; and in failing to give any warning of the voltage with which said wires were charged and the danger incident to contact with them.

It alleges the existence of the playground and the habits of the children playing thereon and flying kites therefrom with wires, strings, or cords attached thereto, with which they held said kites and alleges that such strings or cords were or might become conductors of electricity and alleges the likelihood of such wires, strings, or cords coming in contact with the defendant's wires. It alleges that, on or about March—, 1935, the plaintiff was on such playground flying a kite with a string or cord attached, by which he held it, in a condition to act as a conductor of electricity, and that his kite flew above

the defendant's wires so that the cord or string attached thereto came in contact with such wires and, as a direct and proximate result. of such contact, the electric current escaping. from such wires escaped along or upon the string or cord attached to the said kite which he was holding, into and against him so, that he was permanently injured thereby. Then, as a basis for the defendant's duty to the plaintiff and its liability for the plaintiff's injuries by reason of its alleged breach of its duty, it alleges that the defendant knew, or by the exercise of the proper degree of care should have known, of the habits of children playing on that part of the street over which its wires passed and the adjacent commons and flying kites therefrom with cords or strings attached which they held and of the likelihood of such cords or strings acting as electric conductors coming in contact with its wires in their defective condition and of the likelihood of consequent injury to those flying such kites, including the plaintiff, in time to have corrected the defective condition of its wires so as to prevent the escape of electric fluid therefrom or to have placed the same at a point beyond which there was not any opportunity for the plaintiff to have come into direct or indirect contact therewith before the time that the plaintiff was injured thereby.

The defendant asserts that such theory is erroneous and can not be supported under the law. It contends that the only duty that the defendant owed the plaintiff was to place its wires at a sufficient height that they were out of reach of those who would ordinarily be in no possible danger of coming in contact with them or with electric fluid escaping therefrom or, if not at such a height, then so to protect said wires by insulation that no current could escape therefrom to the injury of the plaintiff.

(2) The question in this case is whether there was any duty upon the defendant so to maintain its wires at such a height that the cord or string attached to the plaintiff's kite, by which he was holding the same, would not come in contact therewith and, by becoming charged with electric fluid escaping therefrom, injure him or to maintain such wires in an insulated condition so that electric fluid would not escape therefrom and charge such kite string or cord with escaping electric fluid therefrom upon its contact therewith, to the plaintiff's injury.

The defendant asserts that to charge the defendant with such a duty is to make it an insurer of the safety of the plaintiff and of other children flying kites upon the streets or commons and that to do so is beyond any sanction of the law.

(3) It has been repeatedly held that one maintaining an electric line or wire is not chargeable as an insurer of the safety of others. [Howard v. St. Joseph Transmission Co., 316 Mo. 317, 289 S. W. 597; State ex rel. Kansas City Light & Power Co. v. Trimble, 315 Mo. 32, 285 S. W. 455; Luehrmann v. Laclede Gas Light Co., 127 Mo. App.

213, 104 S. W. 1128; Brubaker v. Kansas City Electric Light Co.; 130 Mo. App. 439, 110 S. W. 12.] Numerous other authorities in addition to those cited are. to the same effect.

One is only liable when such one fails to use that reasonable and high degree of care commensurate with the requirements of the situation to insulate the wires and to keep them insulated wherever it may reasonably be anticipated that persons lawfully coming into close proximity therewith, whether in the pursuit of business or pleasure, may come into contact with them or fails so to locate them as to place them beyond the reach of such persons, when in such proximity, who ordinarily are in no possible danger of coming in contact with them.

The rule with reference to the duty of electric companies and their liability is well stated in Godfrey v. Kansas City Light & Power Co., 299 Mo. 472, l. c. 485, 253 S. W. 233, as follows:

"It is well settled that an electrical company, 'if reasonably chargeable with knowledge, or of facts making it reasonably probable, that persons may lawfully come into close proximity to its wires for purposes of either business or pleasure, is obligated "to use every precaution which was accessible to insulate its wires" at such places and to use the utmost care to keep them so.' "

The rule thus declared is supported by ample authority. [Williams v. Springfield Gas & Electric Co., 274 Mo. 1, 202 S. W. 1; Geismann v. Missouri-Edison Electric Co., 173 Mo. 654, 73 S. W. 654; Von Trebra v. Laclede Gaslight Co., 209 Mo. 648, 108 S. W. 559; Clark v. St. Louis & S. R. Co., 234 Mo. 396, 137 S. W. 583; Campbell v. United Rys. Co. of St. Louis, 243 Mo. 141, 147 S. W. 788; Sudmeyer v. United Rys. Co. of St. Louis (Mo. Sup.), 228 S. W. 64; Thornton v. Union Electric Light & Power Co. (Mo. App.), 72 S. W. (2d) 161, and cases cited therein.]

Again, in Thornton v. Union Electric Light Co., supra (l. c. 164 of 72 S. W. (2d)), it is said:

"Electricity is a most subtle and dangerous agency. It lurks unsuspected in the simple and harmless wire, and gives no warning of its deadly presence. Wherefore, it is uniformly held that an electric company employing wires highly charged with the subtle and violent agency in streets, highways, or other public places, is in duty bound either to insulate such wires or place them beyond the range of contact with persons rightfully using such streets, highways, or places, and to exercise the utmost care to keep them so."

In Smith v. Southwest Missouri R. Co., 333 Mo. 314, 62 S. W. (2d) 761, l. c. 763, Judge ATWOOD, from the Supreme Court, said:

"Persons dealing with electricity must exercise the highest degree of care to keep their wires in such condition as to prevent injury to others who lawfully may be in close proximity thereto."

(4) The defendant contends, however, that, notwithstanding the rule as to the use of care required of it in placing and maintaining its wires out of reach of those who would ordinarily be in no possible danger of coming in contact with them or in so insulating them that electric fluid would not escape therefrom to the injury of others, it is not liable to the plaintiff for his injuries under the circumstances stated in the petition. In other words, the defendant contends that it is not required to guard against injuries that are possible merely— that is, such as do not happen with such frequency as to become a definite experience—and that it is not required to guard against the wrongful acts of others or to guard against unwarranted interference with its wires by others and trespass upon its wires by others. It contends that the situation presented by the petition, under which the plaintiff's injuries were received by him, was so unusual that the defendant could not anticipate such situation and such injuries and was not required to guard against them.

The doctrine of anticipation, where one is charged with notice as in the petition, has been resolved into this simple proposition—that, after an injury is complete, it may be said that one charged with negligence may be held liable for anything which appears to have been the natural and probable consequence of such one's act or omission. [Dean v. Kansas City, St. L. & C. R. Co., 199 Mo. 386, 97 S. W. 910; Buckner v. Stock Yards Horse & Mule Co., 221 Mo. 700, 120 S. W. 766.]

If, therefore, the injury of the plaintiff alleged in the petition followed as a natural and probable consequence of the defendant's act in maintaining its wires in the condition alleged in the petition and of its omission to correct such condition, the defendant is required to have anticipated such result and to have guarded against it. The liability of a person charged with negligence does not depend on the question whether, with the exercise of reasonable prudence, he could or ought to have foreseen the very injury complained of; but it depends on the question whether or not such injury was the natural or probable result of his act or omission. He may be held liable for anything which, after the injury is complete, appears to be the natural and probable consequence of his act or omission. The fact that few accidents of the sort are recorded can not save the situation for the defendant. [Dean v. Kansas City, St. L. C. R. Co., supra.]

If the defendant had reason to know, as charged in the petition, that the plaintiff and other children were in the habit of flying kites with strings or cords attached on the street or commons over which its wires passed, it was bound to anticipate that such strings or cords might come in contact with its wires where such wires were not placed beyond any point of contact with such strings or cords and that such wires, where in an uninsulated condition, would charge such strings or cords with the electric fluid escaping from them, to the injury of

such children; and it is bound to answer to any one of them sustaining injury on such a contact for the injury so sustained. [Dean v. Kansas City, St. L. & C. R. Co., supra.]

(5) We are not prepared to agree that the plaintiff committed a wrongful act in flying his kite from the street or commons in question. Neither are we prepared to say that his act in so doing and the contact of his kite string or cord by which he held the same with the defendant's wires were a trespass upon such wires or an unlawful interference with them—at least of such a character as to excuse the defendant from guarding against such contact or interference under the circumstances charged in the petition.

The petition charges the defendant with knowledge of the habits of children flying their kites from such streets and commons. There was nothing wrongful in the plaintiff's presence upon the street or the commons. He had the right to be there. Even if regarded as a trespasser upon the street or commons, such fact is not available to the defendant as a defense; for the street and commons were not its property. [Godfrey v. Kansas City Light & Power Co., supra.]

There was nothing wrongful in the plaintiff's flying a kite from the street or commons. He had a perfect right to do so, so long as he did not obstruct the free use of the street by others. The only question is whether or not the contact of his kite string or cord with the defendant's wires was an unwarranted interference with or trespass on such wires. We do not consider that it was. That such string or cord might contact with such wires was the natural and probable consequence of the exercise by the plaintiff of a right belonging to him, of which the defendant with knowledge was bound to take notice. Under such circumstances as are charged in the petition, the only question is whether or not the defendant had discharged its duty by placing its wires beyond the reach of any such contact or by insulating the·same so that electric fluid would not escape therefrom, to the plaintiff's injury.

(6) The defendant complains again that the petition fails to allege facts sufficient to show any causal connection between the plaintiff's injuries and the alleged negligence of the defendant, for the reason that the defendant's wires were so placed and maintained as to be out of his reach when ordinarily he would be in no possible danger of coming in contact therewith.

The rule to be applied is not to be restricted, except by its own terms. Contact may be direct or indirect. It may be direct and personal or indirect through extraneous instrumentalities. Under the rule, the defendant is required to guard against contact of any nature, direct or indirect, that might ordinarily be anticipated.

If the defendant, from the knowledge with which it stands charged in the petition, was bound to anticipate an injury to the plaintiff as a result of an indirect contact with its wires through the instrumen-

tality of his kite string or cord, then it conclusively appears from the allegations of the petition that the defendant's wires were not so placed, within the meaning of the rule, as to be out of the reach of the plaintiff who would ordinarily be in no possible danger of coming in contact therewith or were not so insulated as to prevent the escape of electric fluid therefrom, to the plaintiff's injury.

(7) It is further urged that the plaintiff's injury is not shown to have resulted from any breach of duty owing by the defendant to him. Whether or not the defendant was under any duty to the plaintiff depends on the facts alleged in the petition as to its knowledge of the plaintiff's habit of flying his kite from the street or the common, over which its wires passed. If it had such a knowledge, it was under such a duty. It stands charged with knowledge of such facts. It was bound to take notice of them and guard against injury to the plaintiff.

In the Godfrey Case above cited, it was held that the defendant—having notice of the habits of boys playing in a walnut grove, through the limbs of the trees of which its wires passed, and their habit of climbing such trees to gather walnuts therefrom—was bound to take notice of such facts and so to place and guard its wires as not to injure said children when climbing said trees. Thus, it was said in that case (1. c. 485, 486 of 299 Mo.): "It is also well established law, that electric companies must take notice of the natural instinct of boys to climb trees . . . and if they string wires through such trees under circumstances which may reasonably charge them with notice of the probability of boys climbing such trees, and a boy who has climbed a tree . . . is injured by an uninsulated or dangerous wire, without contributory negligence, the company must respond in damages." Numerous cases are there cited in support of such statement, including section 512 of Curtis' Law of Electricity.

When the same rule is applied to the facts charged in the petition in this case, it must be held that it was the duty of the defendant to take notice of the habits of the children, including the plaintiff, of using the street and the commons adjacent thereto as a playground and of flying their kites therefrom with strings attached thereto, which they held in their hands, and to take notice, that such strings so held by them might come in contact with its wires, which, if said wires were uninsulated, might result in injury to the plaintiff from his string becoming charged with electricity escaping from such wires, and that, for any breach of such duty, it is liable.

(8) But, contends the defendant, even though a causal connection between the plaintiff's injury and the defendant's alleged negligence is charged, nevertheless the petition contains such specific allegations of fact that the allegations of such causal connection are overcome or destroyed thereby and that such specific allegations conclusively show that the injury was not proximately caused by the

acts .of negligence of the defendant, since such specific allegations show that the injury was caused by an intervening agency.

(9) An intervening agency, to overcome or destroy the operation of the antecedent negligence of the defendant, must be one not ordinarily to have been anticipated by the defendant in the natural and probable order of things. [45 C. J., sec. 490, pp. 929, 930.] It must have been so unusual and so improbable as not to have been reasonably foreseen or considered by an ordinarily prudent person. [45 C. J., sec. 494, p. 935.] If it was an agency the interposition of which might have been ordinarily anticipated as a natural and probable result, it is not sufficient to excuse the antecedent negligence of the defendant or to absolve the defendant from responsibility on account thereof. Under such circumstances, the antecedent negligence will, notwithstanding such intervening act or agency, be regarded as the proximate cause of the injury. Moreover, it must have been of a character to have superseded the defendant's original negligence and to have become in itself the operative cause of the plaintiff's injury. [45 C. J., sec. 490, pp. 929, 930.] It was not of such character.

Thus, in Daneschocky v. Sieben, 195 Mo. App. 470, 193 S. W. 966, l. c. 967, Judge ELLISON, speaking for this court, said:

". . . Lawyers from early times, induced by the ordinary meaning of words, and seeming necessity, have been led into the thought that since the word 'proximate' means immediate, or next to, the only actionable cause is the cause which actually did the injury; and that any prior cause, no matter how closely related, was a removed cause, and therefore not proximate, and therefore not actionable."

". . . When the rule is stated in its full breadth, viz. that a separate intervening cause will break the line of causation leading out from the first cause and, in law, absolve the first cause from all responsibility, it is the statement of a mere arbitrary rule, which in practical application would lead to results opposed to sound reason. The rule should always be accompanied by the qualification that:

" 'If the intervening act is such as might reasonably have been foreseen or anticipated as the natural or probable result of the original negligence, the original negligence will, notwithstanding such intervening act, be regarded as the proximate cause of the inquiry.' "

". . . An intervening cause should not be held to excuse the first cause unless such intervening cause is one so unusual and so improbable as not to be reasonably foreseen or considered by an ordinarily prudent man."

What Judge ELLISON said in that case was approvingly quoted by Judge WHITE for the Supreme Court in Smith v. St. Joseph Ry., Light, Heat & Power Co., 310 Mo. 469, 276 S. W. 607.

In the Smith Case, the defendant maintained a guy wire which was uninsulated. As the result of a fire, it was necessary to cut a primary wire so that the end hung down to within a short distance of the guy wire. The primary wire was insulated, but the cut end was exposed. The plaintiff therein stepped on the guy wire and was struck by the hanging primary wire, containing 2300 volts; and the guy wire acted as a ground, completing the circuit. It was contended by the defendant therein that its failure to insulate the guy wire was not the proximate cause of the injury but that the immediate and proximate cause was the hanging primary wire with which the plaintiff came in contact; and the defendant argued that, in maintaining the guy wire, it could not possibly have foreseen that a fuse box would have taken fire and necessitated the cutting of the primary wire. The court, ruling on such contention, cited the Buckner Case, supra, and stated that the defendant's liability did not depend on whether, in the exercise of reasonable diligence, it might or ought to have foreseen the very injury complained of but that it was liable for anything which, after the plaintiff's injury was complete, appeared to have been the natural and probable consequence of its act or omission.

If the doctrine of the above cited cases is applied to the case at bar, it may be said that the plaintiff herein would not have sustained the injury complained of in the petition had it not been for the uninsulated condition of the defendant's wires. When it is considered that the defendant was charged in the petition with knowledge of the habits and custom of the children flying kites at the place of the plaintiff's injury, it can not be said that the defendant should not have anticipated that a kite string would come in contact with an uninsulated portion of its wires and act as a conductor of its electricity to the holder of such string. The intervening kite string as an agency should have been foreseen and anticipated as a natural and probable result of the defendant's permitting its wires to be unprotected by sufficient insulation.

It follows that it can not be said as a matter of law that the defendant's negligence was not the proximate cause of the plaintiff's injury.

(10) The allegations of the petition are such as to bring the instant case within the rule declared in Godfrey v. Kansas City Light & Power Company, supra, and kindred authorities.

(11) The petition is not subject to the criticism made that the plaintiff by it seeks to extend or enlarge the "attractive nuisance doctrine" or ingraft on the jurisprudence of this state a new doctrine based on an "attractive environment near an unattractive, dangerous instrumentality," which two doctrines were held in Howard v. St. Joseph Transmission Co., supra, to be practically the same. The petition in this case does not appear to be predicated upon any of the distinctive principles upon which such doctrines are based.

(12) Neither is the petition in this case subject to the objection thereto made by the defendant that, by its allegations, it shows that the defendant's negligence complained of was merely a condition in itself inactive and unoperative and that the plaintiff's injury was made possible only by an independent or intervening agen, which became the proximate cause of the injury; that is, by the plaintiff's kite string coming into contact with the defendant's wi.. in their negligent condition.

It is true that the defendant's negligence became operative only through the contact of the plaintiff's kite string and cord with said wires; but such independent and intervening agency was not such an unusual and improbable intervention as ought not to have been anticipated where the defendant is charged with notice, as in the petition. Neither was it of a kind and character to have broken the causal connection between the defendant's original negligence and the plaintiff's injury. On the other hand, it was of a kind and character which was required to be anticipated and guarded against as one likely to happen. The kite string in itself was not loaded with danger. It never could have become dangerous except for the contact with the defendant's wires. In other words, if the defendant's wires had not been in the condition in which they were and within plaintiff's contact therewith, the plaintiff would not have been injured. The condition of the defendant's wires is the primary and continuing cause of the plaintiff's injury. If they had not been in the negligent condition in which they were, the plaintiff would not have been injured by the contact of his kite string with them.

The defendant's negligence must, therefore, under the allegations of the petition, be considered the proximate cause of the plaintiff's injury.

(13) The petition in this case pleads specifically the acts of negligence complained of, with which the defendant is charged, and further pleads that the negligence of the defendant in such respects directly and proximately caused the injury of which the plaintiff complains.

A general allegation of this kind is sufficient unless the specific allegations of the pleadings are so inconsistent therewith as to show that the general averment is not true. [Indianapolis Union Ry. Co. v. Waddington, 169 Ind. 448.]

We are unable to find wherein there are any special averments in the petition before us which have the effect of superseding or overcoming the general averment therein of the causal connection between the plaintiff's injury and the alleged negligence of the defendant. The specific allegation in the petition to the effect that, while flying his kite, his kite string came in contact with the defendant's defectively insulated wires, as a direct result of which the electric current escaping from such wires into the kite string or cord, at-

tached to the kite, and to and into the plaintiff, injuring him, does not have such effect. That is but an allegation to the effect that the defendant's negligence was the proximate cause of the plaintiff's injury or that the plaintiff's injury followed as the natural and probable result of the defendant's negligence alleged. Instead of being in contradiction of the general averment, it is in explanation and aid thereof.

(14) Having carefully considered the contentions of the respective parties in their respective briefs, together with the authorities submitted, we are constrained to the view that the petition states a good cause of action and that the trial court erred in sustaining the demurrer.

It follows that the judgment is reversed and the cause is remanded to be proceeded with in a manner not inconsistent with the views expressed herein. All concur.