Mildred GRIMES, (Plaintiff) Respondent,

v.

STANDARD OIL CO., a Corporation, and Schenberg's 20th Century Supers, Inc., a Corporation, (Defendants) Appellants.

Nos. 31239, 31240.

St. Louis Court of Appeals.

Missouri.

Sept. 17, 1963.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 14, 1963.

G. W. Marsalek, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for Standard Oil Co.

Louis Shifrin, Shifrin, Treiman, Agatstein & Schermer, Richard M. Stout, and Thomas M. Richards, St. Louis, for Schenberg's 20th Century Supers, Inc.

Morris A. Shenker and Frank B. Green, St. Louis, for respondent.

ANDERSON, Judge.

This is an action by Mildred Grimes for damages sustained by her as a result of a fall on the public sidewalk alleged to be

due to the negligence of defendant Standard Oil Company, a corporation, and defendant Schenberg's 20th Century Supers, Inc., a corporation. The jury returned a verdict against both defendants in the sum of $15,000.00 From the judgment on this verdict defendants have appealed.

■ The case is here on two separate appeals. The appeal of Schenberg's 20th Century Supers, Inc., is identified in this court as No. 31,240. The other appeal, taken by Standard Oil Company, is identified in this court as No. 31,239. However, regardless of the fact that separate notices of appeal were served and received by the clerk of this court, and filed under separate docket numbers, there is still but one case in this court as in the court below. Rothweiler v. St. Louis Public Service Co. et al., Mo. App., 224 S.W.2d 569; Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243; Waterman v. Waterman, Mo.App., 210 S. W.2d 723; Lincoln Trust Co. v. Mersman, Mo.App., 187 S.W.2d 50; Montana v. Nenert, Mo.App., 226 S.W.2d 394.

Defendant Schenberg operated a grocery store at 39th Street and Lafayette Avenue in the City of St. Louis. During the Christmas season 1959, said defendant displayed Christmas trees on both sides of the sidewalk outside its store on the Lafayette Avenue side, leaving a passageway through the trees on the sidewalk estimated by plaintiff as being 2½ to 3 feet wide. The south wall of Schenberg's store building is twenty feet from the north curbline of Lafayette. It is nine feet from the north curb of Lafayette to the south edge of the sidewalk, and six feet from the north edge of the sidewalk to the building line. In the rear of the building west, there was a drum for fuel oil. Fuel oil stored in this drum was used to provide heat in the area where the Christmas trees were displayed. This oil was furnished to defendant Schenberg by defendant Standard Oil Co. On December 21, 1959, Standard made a delivery of oil to Schenberg. This delivery was made after dark, between 6:00 and 7:00 P.M.. Standard's truck was "double parked" on Lafayette, and a dark colored oil hose ran from the truck to the oil drum.

Plaintiff, who had alighted from a bus at the corner of 39th Street and Lafayette Avenue, walked west on the sidewalk in question, intending to go to a Mrs. Noble's house to get her young son. Plaintiff had been going down the sidewalk through the trees after dark for several days prior to the accident. Other than for the presence of the hose, the condition of the sidewalk on the night in question was no different than on the other nights when she had used the walk.

Plaintiff claims she fell over the hose and was injured. She stated she did not see the hose until after she had fallen. Defendants deny any knowledge of the fall having taken place. Plaintiff testified that the hose over which she tripped was east of the steps, which were to the rear of t' ə building owned by Schenberg. She also testified that the trees blocked out some of the light and that it was very dark where she fell. All the witnesses, including plaintiff, agreed there were some exterior artificial lights mounted on the south wall of the building belonging to Schenberg. There were also city street lights in the vicinity. Plaintiff first testified that the lights were turned on, but later said she did not know if they were on or not. Her witness, Mrs. Spencer, said she was sure the lights were on.

Other facts will hereafter be stated in connection with the points raised.

Appellant Schenberg contends that the court erred in overruling its motion for a directed verdict. In support of this contention it is urged that because plaintiff had knowledge of the condition of the sidewalk, except for the presence of the hose, and the fact that the hose was owned by Standard Oil Company and placed across the sidewalk by the latter's employee, over whose action Schenberg had no control, the alleged negligence of Schenberg was not the

proximate cause of plaintiff's fall. In other words, Schenberg takes the position that its act of maintaining the display could only be a remote cause of plaintiff's fall and that the negligence of Standard Oil Company was the sole proximate intervening cause thereof.

The evidence, which in our judgment refutes said contention, is as follows: Schenberg made a private use of the public sidewalk in question for the display of its merchandise. This display consisted mainly of about 1,000 Christmas trees stored in bins located on both sides of the sidewalk. In fact the display encroached on the sidewalk, leaving a pathway through the trees of 2½ to 3 feet, or just wide enough for one person to walk leisurely through the display. The trees blocked out some of the light; the lights were dimmed and it was very dark where plaintiff fell.

Schenberg used an outdoor stove, at the site of this display, which burned oil. The oil for this stove was stored in an oil drum placed at the top of steps leading from the sidewalk to a walkway in the rear of the building. Mr. Schenberg, manager of the store, had several conversations with the defendant Standard Oil Company, the day plaintiff was injured, about the delivery of oil. When the oil truck came he was told by another employee that it had arrived. He saw the oil delivery man at the time. Mr. Schenberg had purchased oil for the oil drum on previous occasions and knew that it was delivered by means of a tanker truck, and that the oil would be placed into the drum by means of a hose leading from the tank to the drum. It was dark at the time the tanker arrived, being between 6 and 7 P.M., on December 21st. Plaintiff did not see the hose until after she tripped over it. She further testified she could not have seen the fuel hose with what she had to go through. The hose was dark in color.

■ It is clear from this evidence that a jury could reasonably have found that the sidewalk itself was obstructed, and that the display in question so darkened the pas-

sageway through the trees as to make it difficult for one using the sidewalk to see objects thereon. From the evidence, and the testimony we have detailed, it could reasonably be found that plaintiff's injury would not have happened, but for the negligence of Schenberg's in maintaining the display of Christmas trees in the manner and to the extent it did. Such negligence is, therefore, to be viewed as a proximate and efficient cause of the plaintiff's injury, although another independent act intervened in point of time subsequent thereto, which concurred and operated therewith to cause said injury. It is our view that such intervening cause could, under the facts of this case, reasonably have been anticipated, which is an essential element necessary to a finding that the negligence of defendant Schenberg's was a link in the chain of causation. Our ruling is based upon the law as announced in the following cases. Dickerson v. St. Louis Public Service Company, 365 Mo. 738, 286 S.W.2d 820; McWhorter v. Dahl Chevrolet Co., 229 Mo.App. 1090, 88 S.W.2d 240; Setzer v. Ulrich, Mo.App., 90 S.W.2d 154; Gray v. Kurn et al., 345 Mo. 1027, 137 S.W.2d 558; Schneiter v. City of Chillicothe, 232 Mo.App. 338, 107 S.W.2d 112; Brown v. Alton R. Co., 236 Mo.App. 26, 151 S.W.2d 727.

Both appellants contend that on the evidence adduced, plaintiff was guilty of contributory negligence as a matter of law, in failing to see an obstruction which was clearly visible, and which could have been avoided by the exercise of ordinary care for her own safety.

In support of the contention that the hose was clearly visible and that plaintiff was negligent in not observing it, appellant relies upon the following testimony. Plaintiff could see the hose after she fell over it, and observed that it angled across the sidewalk. The end of the hose went up the steps adjacent to the walk and to the back of the building. She saw the driver of the truck, west of her, on the sidewalk. She saw an employee of the store known

as "Freddy" at some distance away and could identify him. She could see that her hose was torn. After she got up from the sidewalk plaintiff could see the tank truck double-parked in the street, facing west, and observed that it was halfway between a fireplug and an automobile. She could see that a name was on the tank part of the truck and she could read the name. Plaintiff further testified she had been going down the same path between the Christmas trees for several days before the day of the accident.

It is also urged that plaintiff was not watching where she was putting her feet at the time, but was watching out for Christmas trees and other people on the walk. The testimony upon which this statement is based was as follows:

"Sir, I wasn't looking right at my feet when I came through there, I was watching out for the trees and the other people, trying to make my way through there. I wasn't looking at the ground, right at my feet, watching where I was putting my feet."

In this connection, as we have heretofore pointed out, according to plaintiff's evidence the branches of the Christmas trees encroached on the sidewalk, leaving a pathway through the trees of only 2½ to 3 feet, or just wide enough for one person to walk leisurely through. There were other people shopping in the area and plaintiff had walked around at least two or three persons before she reached the place where she fell.

It is also pointed out that plaintiff's witness, Mrs. Spencer, was at some undisclosed distance from plaintiff when she saw plaintiff down on the sidewalk. When she got close to plaintiff to assist her, Mrs. Spencer could see the hose. She saw that the hose lay at an angle from the tank truck in the street across the sidewalk toward the building. She could see the truck was red, and could see a container at the steps at the west end of the store building. She stated

that she could have stepped over the hose on the day plaintiff fell, but could not recall whether she did. She had, on other occasions, seen a fuel hose across the walk, about the same time of day and in about the same position in which it was placed on the day plaintiff fell, and a lot of people stepped over it.

It is also pointed out that the color of the hose was dark or black and that the court should take judicial notice of the fact that a concrete sidewalk is gray in color. The lights on the south side of the building were on at the time of plaintiff's fall, and flood lights on arms on a signboard above the building were also on at the time.

■■ As opposed to the foregoing evidence there was, as we have heretofore detailed, evidence that the display of Christmas trees encroached upon the sidewalk, leaving a pathway through the trees of 2½ to 3 feet; that the trees blocked out some of the light and that it was very dark where plaintiff fell. Plaintiff, as she proceeded down the sidewalk, not only had to observe the sidewalk, but was compelled to look out for tree branches extending over the sidewalk, and for other persons using the walkway. It was not necessary under the circumstances for her to keep her eyes riveted upon the sidewalk or to closely examine the place where she would place her feet. Ryan v. Kansas City, 232 Mo. 471, 134 S.W. 566; Ryan v. Kansas City, 232 Mo. 471, 134 S.W. 985. Knowing of the presence of the Christmas trees she was under a duty to see and discover any danger she might encounter from such obstruction, but otherwise she had a right to presume the way was clear and free from other forms of obstructions, and allow her attention to momentarily be diverted by circumstances concerning her interest. Butler v. City of University City, Mo.App., 167 S.W. 2d 442. Whether plaintiff exercised ordinary care for her own safety under the facts and circumstances developed by the evidence was, in our judgment, a jury question, and the court did not err in so ruling.

The further contention of said appellant, that since plaintiff had knowledge of the condition created by defendant Schenberg, said defendant's negligence was not the proximate cause of the injury, must be held to be without merit. Such condition under plaintiff's evidence could be found to be a contributing factor in causing plaintiff's injury. What we have said disposes of the point urged. McWhorter v. Dahl Chevrolet Co., supra.

Schenberg assigns as error the action of the trial court in admitting into evidence Section D of Ordinance 4046 of the City of St. Louis. Said Section is as follows:

"It shall be unlawful to expose or offer for sale, by auction or otherwise, upon any public highway or other public place in this city, any merchandise or other articles, provided, however, that this Section shall not be construed to forbid merchants occupying with their merchandise, a limited portion of the sidewalk adjacent to the property occupied by them in conformity with the conditions of a permit previously obtained from the Board of Public Service, the payment of fees as provided in Section 2362–A and subject to the following limitations: One foot and six inches on sidewalks eight feet or less in width, two feet on sidewalks more than eight feet and less than ten feet in width, three feet on sidewalks ten feet and less than twelve feet in width, four feet on sidewalks twelve feet and less than fifteen feet in width, and five feet on sidewalks fifteen feet or more in width; and provided further, that this section shall not be construed to prevent merchants and manufacturers from occupying with their merchandise not more than one-half of the width of the sidewalk upon which the respective merchant's or manufacturer's place of business abuts, when receiving or shipping such merchandise if said merchandise is not permitted to remain on such sidewalks more than four hours, and provided further that such merchandise shall not remain on the sidewalk when the place of business abutting upon such sidewalk is not open for business."

The petition, in substance, alleged that defendant Schenberg had carelessly and negligently obstructed the free passage of pedestrian traffic upon the sidewalk by the maintenance of the trees and other property upon the sidewalk in question, and did violate the foregoing Ordinance and thereby create and maintain a public nuisance, which, it knew or should have known, would expose the public and particularly plaintiff to an unreasonable risk of bodily harm; that said defendant carelessly and negligently obstructed plaintiff's view of the sidewalk and the fuel oil hose by the storage of the trees and other merchandise upon the public sidewalk, and did violate the Ordinance and thereby create and maintain a public nuisance, when it knew or should have known that to do so would expose the public, and particularly plaintiff, to an unreasonable risk of bodily harm; that said defendant carelessly and negligently failed to provide adequate lighting of the sidewalk and did violate the Ordinance, when said defendant knew or should have known that to do so would create an unreasonable risk of bodily harm to the public and particularly plaintiff; that said defendant carelessly and negligently provided improper and dangerous lighting upon the sidewalk, in that said lighting cast deceptive shadows from the Christmas trees and did violate the Ordinance, when it knew or should have known that to do so would create an unreasonable risk of bodily harm to the public and particularly plaintiff; that said defendant carelessly and negligently channeled public pedestrian traffic on the public walkway where it was forced to come in contact with the fuel oil hose, when said defendant knew or should have known that to do so would create an unreasonable risk of bodily harm to the public and particularly plaintiff; and that said defendant negligently and carelessly failed to warn persons using the public walkway, and particularly plaintiff, of

the presence of the fuel oil hose lying across the public walkway when it knew or should have known that such failure created an unreasonable risk of bodily harm to the public and particularly plaintiff.

The case was submitted to the jury on the theory of common law negligence, and not on any theory that the violation of the Ordinance created a nuisance, or that it created a new liability different from that imposed by the common law.

■ But appellant Schenberg contends that the Ordinance was not admissible in evidence because it was not designed to create a cause of action, and did not do so. Such is not the test of admissibility. The true test is that announced in the opinion of our Supreme Court in State ex rel. Wells v. Mayfield, 365 Mo. 238, 281 S.W.2d 9, loc. cit. 13, where the court said:

"* * * it seems entirely clear under a multitude of authorities that the violation of a *penal* ordinance is evidence of negligence in a civil action for personal injuries, if the plaintiff was one of the class for whose benefit the ordinance was adopted, and if the ordinance was enacted to protect persons or property, conserve public health, or promote public safety. Such ordinances are not considered as creating a new liability, but merely as defining the duty already owed at common law to the public or the person injured."

Floyd v. St. Louis Public Service Co., Mo., 280 S.W.2d 74, was an action for damages by plaintiffs for the death of their minor child, who was struck and killed while riding his bicycle in the public street. The action was against the owner of a parked truck and the owner and operator of the bus which struck deceased while passing said truck. Plaintiffs offered a city ordinance regulating the parking of motor vehicles and providing that a driver of an overtaking vehicle sound his signaling device. There was evidence that the truck had been parked in violation of the ordinance, and evidence that the bus driver did not sound his signaling device. When the offer was made, plaintiff's counsel stated he did not intend to go to the jury or offer instructions based upon violations of the ordinance. The Court then sustained an objection to the offer. The Supreme Court reversed the judgment. The Court said in 280 S.W.2d 74, loc. cit. 77:

"Plaintiffs now contend that the ordinance should have been admitted in evidence. With this we agree. It is well settled that, in an action based upon common-law negligence, an injured party may prove a violation of an ordinance as tending to prove negligence on the part of the defendant or in an effort to disprove the defense of contributory negligence. Wells v. Henry W. Kuhs Realty Co., Mo., 269 S.W.2d 761; White v. Hasburgh, Mo.App., 124 S.W.2d 560; Hart v. Skeets, 346 Mo. 1118, 145 S.W.2d 143; McPherson v. Premier Service Co., Mo.App., 38 S.W.2d 277.

"Any evidence offered by plaintiffs which tended to prove negligence on the part of the defendants in the respects pleaded, or want of negligence on the part of decedent, was competent and should have been admitted. There was evidence that the defendant Brewery Company had violated Section 1001.32(a) in parking its truck. Likewise, there was evidence that the driver of the bus did not sound his signaling device as required by a portion of Section 1001.53. The plaintiffs were entitled to have the jury know the provisions of this ordinance as evidence tending to prove that the conduct of the defendants in these respects was negligence. They were material upon the very issues upon which plaintiffs elected to submit the case to the jury. Moreover, each defendant contended that the deceased was guilty of contributory negligence in turning his bicycle into the right side of the bus. Proof that the defendants had violated

the applicable sections of the aforementioned ordinance would be material upon the issue as to the alleged negligent conduct of the deceased under the circumstances."

It is apparent that the ordinance in question, in the case at bar, was enacted in the interest of public safety and for the manifest purpose of facilitating the free and unobstructed use, in safety, of the public sidewalks. This appears from the fact that, (1) the amount of the occupation of the sidewalk permitted is required to be proportionate to the width of the sidewalk, (2) it restricts the occupation to the time when the abutting merchant is open for business, and (3) prohibits the use of more than one-half of the sidewalk for receiving or shipping merchandise, with the added proviso that such merchandise shall not be permitted to remain on the sidewalk for more than four hours. Plaintiff, as a member of the public using the sidewalk for the purpose for which it was intended, was within the class of persons for whose protection the ordinance was enacted. Under the facts developed at the trial, the evidence was material on the issue of negligence. The point raised is without merit. The further point that the ordinance should have been excluded for the reason that it was inflammatory and misleading will not be considered for the reason that no such objections were made at the time the ordinance was offered.

The case of Southwestern Bell Telephone Co. v. Rawlings Manufacturing Co., Mo. App., 359 S.W.2d 393, is cited by said appellant in support of its position. In that case, the Telephone Company sued to recover damages to a portion of its conduit beneath an alley brought about by a cave-in of the wall of an excavation which encroached on the alley. The excavation was made by a sub-contractor of a contractor, employed by the owner of the building to excavate for a basement under said building. Plaintiff introduced Ordinance 36721 having to do with removing the lateral support of a public street or alley by excavations alongside such street or alley; also Ordinance 41298 requiring a permit for such excavation work and Ordinance 30386 making such excavation work a misdemeanor, if done without authorization. The court held that it was error to admit these Ordinances for the reason that there would be no causal connection between the failure to secure a permit and the damage to plaintiff's cable. The court stated, in 359 S.W. 2d 393, loc.cit. 399, "If a permit had been obtained, it is certain that this would not have prevented the wall from caving, and neither is there any showing that such a permit would have revealed the presence of the cables." The case is not in point.

Appellant Schenberg also cites and relies on Corey v. Losse, Mo., 297 S.W. 32. In that action plaintiff, a minor son of a tenant, brought suit against the landlord for damages for personal injuries suffered when he fell through a defective part of a porch railing. The porch was in the exclusive possession of the tenant, and there was no contract obligation on the part of the landlord to keep the premises in repair. The action was based upon a city ordinance which provided that it was the duty of every owner, trustee or lessee of every tenement house to provide for and maintain the same in all parts in good repair. The court held that since there was no duty on the landlord at common law to keep the premises in repair, the city could not by ordinance create such duty in favor of one injured by reason of the defective condition of the premises, and that plaintiff, therefore, had no cause of action against the landlord. Clearly this case is not in point on the question presented by this appeal.

Schenberg also relies on the "sidewalk snow removal" cases, which hold there can be no cause of action against an abutting property owner by one injured by reason of the failure of said owner to comply with an ordinance requiring him to remove snow and ice. A case so holding is Russell v. Sincoe Realty Co., 293 Mo. 428, 240 S.W. 147. In that case the court draws a distinc-

tion between such cases and those where the party sought to be held took part in creating a dangerous situation and the ordinance defined a duty with respect to some obligation which the person already owed the public or the party injured. Where one fails to obey an ordinance requiring him to perform a public duty, he incurs a liability to the public authorities only. The "sidewalk snow removal" cases are of this kind. Wells v. Henry W. Kuhs Realty Co., supra. They are clearly not in point on the issues before us.

Appellant, Schenberg, assigns as error the giving of instruction No. 5. This was a verdict directing instruction, and required a finding "that such storage and display of merchandise added to the degree of darkness and that such added darkness, if so, obstructed a view of the sidewalk underfoot for persons in the ordinary use of said area of sidewalk at night time * * *." Said appellant contends there was no evidence to support the hypothesis that the display of merchandise added to the degree of darkness.

An examination of the transcript shows there is no merit to this contention. It appears from the evidence that during the 1959 Christmas season, Schenberg exhibited for sale Christmas trees in the area between the south side of its building and the north curb of Lafayette Avenue. The exhibit was on both sides of the sidewalk that runs through this area. It is nine feet from the north curb of Lafayette Avenue to the south edge of the sidewalk, and six feet from the north edge of the sidewalk to the south wall of the building of Schenberg's. The display encroached upon both sides of the sidewalk, leaving a passage way through the trees, according to plaintiff's testimony, of from 2½ to 3 feet wide. Mrs. Spencer, plaintiff's witness, testified there were no trees actually standing on any part of the sidewalk, but there were tree branches leaning out over the sidewalk. She further testified, "The lighting wasn't too bright and there was room for maybe one person to walk through leisurely, but two would have difficulty brushing against the branches of the trees." The inventory of Schenberg's at the time was roughly 1,000 trees, and for the most part they were stored in bins made from scaffolding. Some of the trees were leaning against the south wall of the building. They were different heights, some ranging from 6 to 10 feet. Mrs. Spencer testified that she was walking west on the sidewalk in question, and first noticed plaintiff lying on the ground a little more than halfway between 39th Street and the rear end of the building. Mrs. Spencer then went to plaintiff and tried to help her up. At that time Mrs. Spencer saw the hose stretched across the sidewalk. At another point in her testimony, Mrs. Spencer stated she saw the hose when she got close to plaintiff. She was then asked the following question. "Q. Would you say the area where you saw Mrs. Grimes had fallen, was any darker than any of the other dark spots in between the street lights?" Her answer was that the trees kept some of the light off the sidewalk, and made it darker.

Plaintiff testified that the front end of the store was well lighted, but as one went toward the rear it was very dark and dim. At another place in her testimony, she stated that it was true there were lights on the side of the building, "but the Christmas trees had them blocked. They were shadowed, I mean, there were Christmas trees stacked up high on both sides of me, and if there were lights coming through there, it was shadowed, it was dimmed." She also stated "they (trees) take out the biggest part of the light that shines on the sidewalk." " * * * Sir, if there was any lights on, they were dimmed. It was very, very dark in the spot where I fell. * * * Well, if there was light on, what I am trying to get at, if there were lights on, on the building, they were very, very dim. I don't know if they were on or off, but I do know that it was very dark where I fell. I couldn't have seen the fuel oil hose with what I had to go through to get there."

From the foregoing evidence it could be found that the Christmas tree display did reduce the visibility of the sidewalk at the point where plaintiff fell, and for that reason we rule against the contention urged.

[15] The second complaint of Schenberg's against the instruction is that there was no evidence that the acts of Schenberg's were the proximate cause of plaintiff's fall and injuries. Said appellant's argument on this point is based upon testimony given by plaintiff during her cross-examination wherein she stated, "Sir, I wasn't looking right at my feet when I come through there, I was watching out for the trees and the other people, trying to make my way through there. I wasn't looking at the ground, right at my feet, watching where I was putting my feet." Said appellant then argues that in the light of this testimony no amount of illumination would have prevented plaintiff's fall, hence the darkness caused by the trees could not be said to have been the proximate cause of plaintiff's fall.

The fact that plaintiff was not giving exclusive attention to her feet or where she was placing them as she proceeded, and was at the time attempting to avoid contact with the trees and other people, does not prove as a matter of law, that her range of vision would not, at the time, have been enlarged to the extent that she would have seen the hose prior to tripping over it, had there been more light at the place in question. We believe there was sufficient evidence from which a jury could reasonably find that the negligence submitted was a concurrent proximate cause of plaintiff's injuries.

The next criticism of Instruction No. 5 is that it did not require a finding that the negligence of Schenberg's was the "direct and proximate" cause of plaintiff's injury, thus permitting the jury to find for plaintiff even though, under the evidence, the negligence submitted may have been considered by the jury to be a remote cause and not the proximate cause of plaintiff's injury.

The Instruction hypothesized the facts relied on by plaintiff as a basis of recovery. These facts were, the presence of the hose across the sidewalk; the maintenance of the Christmas tree display at the places shown by the evidence, which display added to the degree of darkness, which obstructed the view of the sidewalk to persons using the same during the night time; and knowledge on the part of Schenberg's that the maintenance of the display after dark created an unreasonable risk of harm to pedestrians, in the ordinary use of the sidewalk, from foreign objects which might be left or placed upon the sidewalk by said defendant or others. The jury was then instructed to further find as a prerequisite to recovery, that "if you find that in maintaining such condition, if so, defendant, Schenberg's 20th Century Supers, Inc. was negligent and that by reason of such negligence, if any, plaintiff, Mildred Grimes, was caused to trip on the aforementioned fuel oil hose and was caused to fall and be directly injured thereby, if so, and if you find that she was not guilty of contributory negligence in any respect submitted to you in these instructions. * * *"

■ It has been held many times that in submitting the issue of negligence, it is safer practice to modify the submission of causation by the use of the words "directly" or "proximately". Slates v. Joplin Butain Gas Co., Mo., 315 S.W.2d 808; Stumpf v. Panhandle Eastern Pipe Line Co., 354 Mo. 208, 189 S.W.2d 223. However, if an instruction requires the finding of negligent acts which, in the nature of things, must have directly caused the injury, or necessarily formed a part of the efficient cause thereof, the instruction cannot be held erroneous because it does not require the jury to draw the inference which the law itself draws therefrom. Giambelluca v. Missouri Pacific Railroad Co., Mo., 320 S.W.2d 457; Losh v. Ozark Border Electric Co-op., Mo., 330 S.W.2d 847; Stumpf v. Panhandle Eastern Pipe Line Co., supra; Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912; Wilson v. Toliver, Mo., 305 S.W.2d

423; Creech v. Blackwell, Mo., 318 S.W.2d 342. And in determining whether the instruction falls within the exception we look only to the facts hypothesized and not to the evidence of the parties as suggested by appellant Schenberg. In our view, Instruction No. 5 does fall within the exception. If the specific acts hypothesized in the instruction were causative as the instruction required the jury to find, then they must necessarily have directly and proximately contributed to plaintiff's injury.

Schenberg also complains that the instruction is erroneous " * * * because it did not limit the duty of Schenberg to the exercise of ordinary care, but instead submitted an absolute duty." The argument supporting this assignment goes no further than to state that "Nowhere in the instruction is the term 'ordinary care' used", and refers to specifications 7(e) and 7(f) of its motion for a new trial as preserving the point for review. An examination of that portion of the motion for new trial reveals a complaint that the instruction is erroneous because it failed to use the words "in the exercise of ordinary care" in submitting Schenberg's constructive knowledge of the unreasonable risk of bodily harm to persons using the sidewalk in the condition in which it was when plaintiff was injured. There is no merit to the point made. The Instruction required a finding that Schenberg created the condition on the sidewalk in question; that the display of merchandise added to the degree of darkness which obstructed a view of the sidewalk for persons using same during the nighttime; that said defendant in maintaining such condition was negligent and that by reason of said negligence plaintiff was injured. Under the law the fact that a dangerous condition exists has been regarded as sufficient to charge the person responsible therefor with knowledge of the probability of an injury being caused thereby. 65 C.J.S. Negligence § 5, loc. cit. 358; Hartman v. St. Louis-San Francisco Ry. Co., Mo.App., 280 S.W.2d 442. Since it is clear from the evidence that Schenberg created the condition which contributed to cause plaintiff's injury, the requirement in said instruction that Schenberg possessed constructive knowledge that said condition created an unreasonable risk of bodily harm to others was unnecessary.

The next point urged by appellant Schenberg is that Instruction No. 5 is erroneous because it failed to set standards to guide the jury in determining the amount of added darkness caused by the trees necessary to constitute actionable negligence.

The instruction required the jury to find that the added degree of darkness obstructed the view of the sidewalk underfoot for persons in the ordinary use of the sidewalk at nighttime. In our judgment this was, under the facts and circumstances, a sufficient guide to the jury in resolving the issue.

Defendant Schenberg also maintains that it was error to require a finding that said defendant's acts created an unreasonable risk of bodily harm without defining the term "unreasonable risk". The words in question are words of ordinary connotation, which any juror would readily understand to be a risk which a reasonable person would recognize as involving danger of injury to others. In our opinion, it needed no definition. It was the duty of said defendant to offer an instruction defining the words if it was felt the words were not clear and needed definition.

Finally it is urged that the giving of Instruction No. 5 was error for the reason that it included, as a prerequisite to verdict for plaintiff, a finding that Schenberg knew, or should have known, that the maintenance of the display of merchandise upon the public sidewalk after dark created an unreasonable risk of bodily harm to members of the pedestrian public in their ordinary use of the sidewalk. The point made is that it injected into the case the issue of danger to third parties, when the issue, properly before the court, was whether the condition shown was dangerous to plaintiff. An examination of the transcript

reveals there was no such specific objection made prior to the submission of the case to the jury, or in the motion for new trial. For that reason the matter is not properly before us for decision. Civil Rule 79.03, V.A.M.R.; Sullivan v. Hanley, Mo.App., 347 S.W.2d 710.

Finding no reversible error in the record, the judgment is affirmed.

RUDDY, P. J., and WOLFE, J., concur.