CITY OF CHATTANOOGA

*v.*

MILDRED ROGERS, Adm'x.

(*Knoxville,* September Term, 1956.)

Opinion filed December 7, 1956.

WILL ALLEN WILKERSON, WILL F. CHAMLEE, AND JAC CHAMBLISS, Chattanooga, for petitioner.

HARRY BERKE AND CRAWFORD BEAN, Chattanooga, for respondent.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This is another electrocution case in which the plaintiff's intestate was electrocuted. While working on the erection of a building a crane either came in contact with the high tension wires of the City or the current arced or jumped from those wires onto the crane and into the

body of the deceased. At the first trial of the case the trial judge directed a verdict for the defendant. On appeal this was reversed, as is shown by the reported case in Tenn. App., 281 S.W.2d 504, and the cause remanded for a new trial. The cause came on for trial the second time and resulted in a verdict for the plaintiff and on appeal to the Court of Appeals that court affirmed primarily on the basis that the facts as developed in the reported opinion of the first trial established that decision as the law of the case. Upon their examination and reading of the record on the second trial they determined that the facts were to all intents and purposes, the same as the facts of the first trial. This being true the reported opinion in the first trial became the law in the case.

On the petition for *certiorari* the petition was granted largely because of the very sincere allegations of able counsel that:

"The law of the liability of electric utility companies for injuries sustained by one coming in contact with high tension wires is greatly confused, and some clarification must be made by this Honorable Court in order that the lower courts and the citizens may know where they stand."

And because it was seriously contended therein that the Court of Appeals "and the same judge—made an exactly opposite ruling in the case of" *Johnson v. Johnson City,* Tenn. App. 292 S.W.2d 794. It is true different results were reached in these cases. The *facts* were entirely different. In the Johnson case there was a directed verdict which was affirmed by the Court of Appeals primarily on the basis that the accident and injury were due entirely to the negligence of the plaintiff. There was no debatable fact issue for the jury in the Johnson case.

In view of these serious contentions and in view of the fact that for the past few years we have had a great number of these electrocution cases, as is shown by the various reported opinions of the Court of Appeals in this State, we granted *certiorari* and asked that counsel discuss three questions to-wit:

"(1) Was the defendant, City of Chattanooga, guilty of any proximate negligence?

"(2) Even if the defendant was guilty of some negligence, was that negligence merely the furnishing of a condition by which injury was made possible—and did there intervene between such prior act creating the condition and the injury itself, a distinct and unrelated, but efficient cause of the injury?

"(3) This being a second appeal of this case, was the ruling of the Court of Appeals on the first appeal the law of the case on the second appeal?"

Briefs have been filed, arguments heard, we have read the record and now have the case for disposition.

██ ██ It was never contemplated by the Legislature that we should consider these appeals on a broad appeal. It was held in *Bray v. Blue Ridge Lumber Co.*, 154 Tenn. 342, 289 S.W. 504, 505, that:

"By chapter 100, Acts of 1925, the Court of Appeals is a court of review and final determination, except upon petition for *certiorari* presenting (1) errors of law; (2) errors of fact where there is a nonconcurrence between the Court of Appeals and the trial court; or (3) concurrence without any evidence to support the conclusion."

In these jury cases in the Circuit Court the province of the Court of Appeals is merely to determine whether there is any material evidence to take the case to the jury or to support the verdict. *Melody v. Hamblin,* 21 Tenn.App. 687, 115 S.W.2d 237. In such cases if there is any evidence to support these concurrent findings and holdings of the two courts we have no jurisdiction.

In the instant case the facts developed in the first trial are fully and succinctly set forth in the published opinion in this case at Tenn.App., 281 S.W.2d 504. It would be presumptuous on our part to review these facts. Suffice it to say that the Court of Appeals reviewed the facts and in an able opinion by Judge Hale commented on the proposed or alleged difference in the facts as were argued to that court by the City. We have heard argument, as heretofore said and read the record, and must say that the Court of Appeals is correct in their statement and conclusion and that there is material evidence to sustain and support these conclusions.

The first of these distinctions is answered by Judge Hale thus:

"But able counsel for plaintiff in error argue the record on this appeal differs materially from the facts developed on the first trial, in that the opinion on the first appeal stated it was 'admitted by Mr. Floyd, the engineer for the defendant company, that the location of the wires only 4 feet 3 inches from and no higher that the top of the building was dangerous', it being insisted that it is shown 'without contradiction that the wire involved in the accident was more than eight feet distant from the nearest point of the building.' In this counsel errs. Earl Rogers testified this wire was

'in the neighborhood of four' feet from the top of the building, while another witness, Hixon, testified it was so close, he could have 'retched' over and touched it.''

This is well supported by the record and these conclusions certainly could have been reached by the trial court from the evidence adduced.

It is next very forcibly and ably argued that in the second trial there was no evidence that the builders of this building had obtained a permit to build the building and thus there was no inference or implication that the City had notice that this work was to be done there and that a building was to be erected where it was being erected. It is admitted that there was a permit taken "to repair footing". It is thus said that the City had no chargeable notice that this building was to be erected. The Court of Appeals in the opinion of Judge Hale answers this difference in the proof and question thus:

"The footings were poured and anchor bolts placed therein which would put the city on notice that a structural steel building was being erected. There is also some evidence that the clerk in charge had juggled the records and misappropriated permit fees. It seems to us, however, that this question of permit for this construction is rather remote in its weight—the primary question being whether or not the city negligently constructed and maintained this uninsulated high power transmission line at this particular point. If so, and if the 'injury occurs from two causes, both due to the negligence of different persons, but together constituting an efficient cause, all persons whose acts contribute to the injury and are liable therefor, and the negligence of one does not excuse the negligence of the

other.' *Morris v. Bolling,* (Howard, J.) 31 Tenn.App. 577 at (page) 585 (218 S.W.2d 754) quoted and approved in *Payne v. Woodard,* 190 Tenn. 32 at (page) 38 (227 S.W.2d 47)."

It is true as pointed out above that the proof on this question of notice differed to a great extent from that as introduced in the first trial. Even though this is true the question is not determinative because from what is said above (and the record clearly supports it) there was some notice to the City and because even with the permit for footings the City probably did or they should under their permit investigate and get certain information from this fact. At least the jury could draw certain inferences from that.

This question (necessary notice) has been answered in a memorandum opinion filed on March 11, 1955, and prepared for the Court by Mr. Justice Swepston in the case of *Kingsport Utilites, etc. v. Brown,* 201 Tenn. 393, 299 S.W.2d 656, 660, 659. In that case the cities of Knoxville, Nashville and Memphis filed briefs *amicus curiae,* "complaining among other things, of the increased cost of more adequate insulation. When the likelihood of danger to human life is to be balanced against the cost of insulation, we do not think the latter is a very good argument." The question of a city having knowledge was presented and argued in that case. We, after a very careful consideration, considering opinions from many jurisdictions, reached the conclusion that:

"the defendant is charged with knowledge of it being a growing business section by reason of the fact that current is supplied by it to these business houses in that area. Also, we think it a matter of common knowl-

edge for the last 15 years at least, that massive machinery and cranes with tall booms are more commonly used in construction work than other methods in excavating, road-building, bridge building, construction of office buildings, hospitals, etc.

"It does seem, therefore, that it is at least a question of fact about which the minds of reasonable men might differ as to whether a utility is negligent in having such high-powered voltage in lines uninsulated, running through the business section of towns. Of course the law does not require that all lines be insulated at any particular place but only where persons are likely to be and have a right to be, for business, pleasure or otherwise. Judge Felts has covered the question of foreseeability in his opinion in *Spivey v. St. Thomas Hospital*, 31 Tenn.App. 12, 211 S.W.2d 450."

This same question of foreseeability is very forcefully and ably argued in the present case. In the first appeal that question was disposed of as will be seen by reference to that opinion and one of the primary authorities cited therein was *Spivey v. St. Thomas Hospital, supra*, above referred to. We will try not to repeat what was there so ably said but in answer to the argument again here made we may encroach upon it to some extent. In the argument now before us the City says:

"As to the basic and fundamental question in the case—that of intervening conscious agency—the Court of Appeals' opinion is completely silent. There is not one word in the opinion which has to do with this all-important question."

The Court of Appeals in the present opinion referred to that question in the reported opinion where it is very ably treated.

We have examined and read many opinions from various jurisdictions over the United States (these opinions are legion), and·what is said in the Spivey case is the general and the best reasoned rule. In the case of *Schneiter v. City of Chillicothe*, 232 Mo.App. 338, 107 S.W.2d 112, 119, that Court again approved this very apt language which we think applicable here.

" ' "If the intervening act is such as· might reasonably·have been foreseen or anticipated as the natural or probable result of the original negligence, the original negligence will, notwithstanding, such intervening act, be regarded as the proximate cause of the injury."

" ' * * * An intervening cause should not be held to excuse the first cause unless such intervening cause is one so unusual and so improbable as not to be reasonably foreseen or considered by an ordinarily prudent man.' "

■ The question of the proximate cause of an accident, the crane coming in too close proximity to the wires or the lowness of the uninsulated wires, generally presents a question of fact. The mere fact that active intervening cause is so vehemently and forcefully argued and can be argued as the cause of an accident seems to us one of the strongest reasons of why this question should be submitted to a jury if there is any evidence of negligence on the part of two or more parties which might cause the injuries. In this case clearly there was a dispute on material facts as to whether or not the erection. and leaving these uninsulated wires at the height

that they were was negligence on the part of the City or whether or not the crane operator who was handling his crane or whether they came in contact with the wires or whether the current jumped from the wires onto the crane, was all disputed and under such a situation if the minds of reasonable men might differ as to the conclusion to be drawn from these facts (clearly they might do so here) then there is presented a jury question. *Schindler v. Southern Coach Lines*, 188 Tenn. 169-173, 217 S.W. 2d 775.

It is argued that the proof in this case differs because at the first trial the National Electric Safety Code was not introduced, while it was introduced in the instant trial.

Judge Hale very ably answered this argument thus:

"This code has no effect as a legislative enactment. It may be considered along with all other evidence on this question of proper construction and maintenance. The jury saw fit to adopt the evidence offered by the plaintiff below. In our opinion this forecloses this question. Such was the effect of the Supreme Court's opinion in the recent unreported case of *Kingsport Utilities v. Brown*, Sullivan Law.

"Having found no merit in the distinctions urged by the City, we have the same factual situation as presented in the first trial. If there was any change, the plaintiff's case was strengthened by additional evidence as to the necessity of maintaining this line at a height of from 33 to 45 feet."

It is noted that in the second trial the plaintiff introduced numerous witnesses on the point that uninsulated

lines at this height were dangerous and negligent. The City failed to introduce a single lineman who testified that the height maintained at the time of the accident was a safe height or a safe practice.

■■ The general rule of law is that:

"Where the evidence on the second trial is substantially the same as presented on the first, a decision as to its weight or sufficiency by the appellate court on the first appeal is usually the law of the case when the question is again presented for review." 5 C.J.S., Appeal and Error, sec. 1834 (2), p. 1293.

Under notes to this quotation are cases from nearly every State in the Union. We have a number of cases on the question which are collected and cited in the case of *Akers v. Gillentine,* 33 Tenn.App. 212, 231 S.W.2d 372. We are satisfied that the quoted rule above is applicable, that there is no material distinction here, the facts presented on the second trial and those presented on the first trial, and that the reported case of *Rogers v. City of Chattanooga, supra,* sets forth fully the law of the case. In addition to that we have hereinabove stated other principles which we think are absolutely applicable and binding.

For these reasons the opinion of the Court of Appeals is affirmed.