CITY OF ELIZABETHTON, Tennessee,
and Elizabethton Electric
System, Petitioners,

v.

Richard SLUDER and wife, Dianne
Sluder, Respondents.

Supreme Court of Tennessee.

March 1, 1976.

Roy C. Nelson, Allen & Nelson, Murrell Snell, John K. Banks, Walter A. Curtis, City Atty., Elizabethton, for petitioners.

Rondal B. Cole, Dugger & Cole, Elizabethton, for respondents.

## OPINION

HENRY, Justice.

This is a tort action based upon electrical injuries wherein the controlling question is the sufficiency of the evidence to support the verdict of the jury and the judgment of the court therein. The jury awarded re-

spondents verdicts totalling $75,000.00, and they were upheld by the Court of Appeals, with one judge dissenting.

We affirm.

## I.

Respondent sustained serious and disabling injuries as a result of an electrical shock received while working on top of a railroad car located generally under high tension lines of the Elizabethton Electric System. He was engaged in unloading a cement car into an adjacent cement silo. This car was approximately fourteen feet in height. The primary electric lines were 7200 volts to the ground or 12470 volts between phases and were approximately thirty-three feet from the ground. Secondary lines were 120 volts phase to neutral and 208 volts phase to phase. They were located at a lower level. If a perpendicular were dropped from the lines to the ground it would be approximately seven feet from the railroad car, or phrasing it another way, the top of the car was about eighteen feet below and seven feet over from the perpendicular of the lines. The hypotenuse of the right angle triangle thus made would be approximately twenty feet.

Plaintiff was using a twenty foot metal pole, with a shovel affixed to one end, for the purpose of pushing or scraping the cement onto a conveyor that carried it to the silo. While thus engaged, the metal pole in some manner came in contact with one or more of these lines causing the injuries forming the basis of this action.

It is undisputed in this record that the top lines had never been insulated; however, it is clear from the testimony that the requirements of the National Electrical Safety Code are met by uninsulated wiring twenty-eight feet in height. It is also undisputed that the lower lines had once been insulated; however, the insulation had rotted or worn away and these lines were naked and exposed. Either of these lines, under appropriate conditions, could have caused the injuries complained of.

There were no notices or signs warning the general public of the dangerous character of these lines.

As found by the Court of Appeals, the record shows that petitioners knew of this operation and "knew that railroad cars of cement were unloaded into the silo as well as that there would be in the area heavy trucks and equipment."

## II.

It is the theory of the respondents that petitioners were negligent in (1) failing to insulate these wires; (2) locating them at an insufficient height; and (3) failing to give notice or warning, all in view of the totality of the circumstances and particularly in view of their knowledge of the operations being carried on in the locality.

The petitioners insist, in substance, that the respondent was grossly negligent in using a metal pole of this length in proximity to these lines; that he assumed the risk of injury; that he was negligent in permitting the pole to come in contact with the wires; and that they had fully complied with the controlling criteria of the National Electrical Safety Code.

■ This controversy is extremely close on the facts. It was ably and energetically tried, exceptionally well briefed and forcefully argued at the bar of this Court—all in the finest tradition of the trial bar. We are frank to state that the record would have provided ample basis for a defendant's verdict and we would not have disturbed it on appeal. At the same time it supports the verdict in favor of the plaintiffs and, irrespective of our personal view as an initial proposition, we cannot justify vitiating the verdict of the jury.

■ It will be borne in mind that in a case involving a jury verdict, approved by the trial judge and affirmed by the Court of Appeals, our review is limited to a determination of whether there is material evidence to support the verdict. *Wilenzick v.*

*Austin,* 180 Tenn. 591, 177 S.W.2d 548 (1944). Such factual concurrences are virtually binding upon this Court. This does not mean, however, that we are bound by the legal conclusions drawn from the facts so established. Therefore, we enter into the ensuing discussion only for the purpose of determining whether the trial judge and the Court of Appeals properly applied the correct rules of law to the applicable facts and arrived at a correct conclusion.

### III.

We dispose first of the question of foreseeability. The dissenting member of the Court of Appeals argues that it was not foreseeable that a workman would stand atop a fourteen foot boxcar using a twenty foot pole and strike these high voltage lines. We cannot say, as a matter of law, that this unusual combination of circumstances necessarily mandates a finding of foreseeability. The fact that an accident may be freakish does not *per se* make it unpredictable or unforeseen. The use of this particular pole in this particular area and in this particular operation was not unusual. The jury was aware of this defense and rejected it. Foreseeability is a question of fact for the determination of the jury. *Phelps v. Magnavox Company of Tennessee,* 62 Tenn. App. 578, 466 S.W.2d 226 (1970).

### IV.

Petitioners insist that this installation is in compliance with the appropriate provisions of the National Electrical Safety Code. The proof so shows. However, compliance with this Code is not conclusive on the question of petitioners' negligence. *Odum v. Haynes,* 494 S.W.2d 795 (Tenn. App.1972). There is material evidence in this record from which the jury might find that the minimum standards of this Code were insufficient under the facts and circumstances of this case.

The trial judge charged the jury:

I charge you that compliance with the National Electrical Safety Code does not relieve one of tort liability for failure to exercise the highest degree of care . . a compliance (with the Code) does not in and of itself mean that there can be no liability. Compliance with (the Code) is not conclusive on the question of the degree of care owed by the defendant, but is to be considered by you, together with other circumstances in arriving at the question of whether or not a distributor of electric service provided that highest degree of care which I have already defined for you.

We approve this a correct statement of the law.

### V.

All other issues in this controversy are questions of fact. We point out that certiorari cases do not come to this Court on broad appeal, nor is the hearing in this Court *de novo.*

In *City of Chattanooga v. Rogers,* 201 Tenn. 403, 299 S.W.2d 660 (1956), this Court declared:

It was never contemplated by the Legislature that we should consider these appeals on a broad appeal. It was held in *Bray v. Blue Ridge Lumber Co.,* 154 Tenn. 342, 289 S.W. 504, 505, that:

By Chapter 100, Acts of 1925, the Court of Appeals is a court of *review and final determination,* except upon petition for certiorari presenting (1) errors of law; (2) errors of fact where there is a non-concurrence between the Court of Appeals and the trial court; or (3) concurrence without any evidence to support the conclusion.

In these jury cases in the Circuit Court the province of the Court of Appeals is merely to determine whether there is any material evidence to take the case to the jury or to support the verdict. *Melody v. Hamblin,* 21 Tenn.App. 687, 115 S.W.2d 237. In such cases if there is any evidence to support these concurrent find-

ings and holdings of the two courts *we have no jurisdiction.* (Emphasis supplied). 201 Tenn. at 406, 299 S.W.2d at 661.

In certiorari cases we are not concerned with the preponderance or the greater weight of the evidence, nor do we sit in judgment upon its credibility. The evidence may, in our view, preponderate against the finding of the trial court and the Court of Appeals, but, again, we do not weigh the evidence. If there is any evidence to support the verdict, it will not be disturbed on certiorari in this Court.

We conclude and hold that the verdicts in this case find evidentiary support in the record.

Affirmed.

FONES, C. J., and COOPER, HARBISON and BROCK, JJ., concur.