IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

_____

**SHIRLEY R. FERRELL,**

      Plaintiff-Appellant,

                                        Davidson Circuit No. 94C-2199

Vs.                                  C.A. No. 01A01-9703-CV-00100

**JESSE L. MCRAE, JR.,**

      Defendant-Appellee.

**FILED**

**December 12, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

FROM THE DAVIDSON COUNTY CIRCUIT COURT
THE HONORABLE WALTER KURTZ, JUDGE

Gus A. Wood; James R. Omer & Associates of Nashville
For Appellant

David S. Zinn of Nashville
For Appellee

*AFFIRMED AND REMANDED*

Opinion filed:

                                         **W. FRANK CRAWFORD,**
                                         **PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

      This is a personal injury case. The jury returned a verdict for plaintiffs and found the

personal injury damages to be $10,528.40. The jury also found plaintiff forty percent negligent,

and the court entered judgment for plaintiff on the jury verdict in the amount of $6,155.04.

Plaintiffs filed a motion for a new trial and/or additur, and, after a hearing, the trial court granted an additur of $3,500.00 which the defendant accepted. Plaintiff has appealed and presents five issues for review.

## PLEADINGS

Plaintiffs' complaint alleges that on October 18, 1993, plaintiff, Shirley L. Ferrell, was operating her automobile in a northerly direction on Gallatin Road in Davidson County and that the defendant was operating his Chevrolet pickup truck also in a northerly direction on Gallatin Road. Plaintiff avers that defendant's truck struck the rear of her vehicle, and that defendant was guilty of common law negligence in that he failed to keep his vehicle under due and reasonable control; he was operating his vehicle in a reckless manner; he failed to observe that which he should have observed; he operated his vehicle at a speed which was excessive under the conditions then existing; and that he failed to bring his vehicle under control. Plaintiff also avers that defendant violated T.C.A. § 55-8-124 (following too closely) and that the acts of common law negligence and the violation of the statute were the proximate cause of the accident and plaintiff's resulting injuries. Plaintiff avers that she sustained injuries to her back, neck, shoulders, with cuts, abrasions, contusions and lacerations, and she incurred expenses for medical care and treatment for her injuries. Plaintiff avers that as a proximate result of defendant's negligence she will continue to incur pain, suffering, loss of enjoyment of the pleasures of life, and loss of wages and earning capacity.

Defendant's answer denies the material allegations of the complaint and joins issue thereon. The answer further avers that plaintiff was not injured in the manner and to the extent alleged in the complaint, and asserts comparative negligence on the part of the plaintiff.

## FACTS

Plaintiff, defendant, and police officer, Danny Duncan, testified concerning the facts of the accident. Officer Duncan testified that he is with the Metro Police Department and received a call to investigate the accident involving these parties. When he arrived at the scene, he described damage to the back rear light and fender of plaintiff's vehicle and to the whole front end of the defendant's vehicle. He testified that he talked with both parties, and that plaintiff stated to him that "she was driving north on Gallatin Road, she stopped for the vehicle in front of her, when she stopped she was hit in the rear end by vehicle number two [the McRae vehicle].

2

He testified that defendant told him that "he was heading north on Gallatin Road, that the vehicle in front of him stopped, the road was wet and he couldn't stop and hit her in the back end."

Plaintiff testified that on the date of the accident, she left Briley Parkway and got on Gallatin Road and was proceeding in a northerly direction. She testified that she stopped at the traffic light at Walton Lane and was in the left of two north bound lanes. When the light changed to green, she continued north on Gallatin Road in the left-hand lane. She had proceeded ninety feet or so when she saw a car in the left-hand lane in front of her stop with the turn signal on to turn left. She describes the event as follows:

Q. Now, when you say this car, what car are you talking about?

A. A car that was in front, was way in front of me.

Q. How far in front of you was it?

A. Well, I'd say two city blocks, is the way I saw it.

Q. And what was that car doing?

A. It had stopped with a turn signal on to turn left.

Q. And what did you do, if anything?

A. I just left off of my gas instead of, you know, hitting the brakes, I just -- because it was a little distance too. I just let off the gas.

Q. Then what happened?

A. Then I got jolted. I mean I was hit. I didn't know what had happened. I grabbed the steering wheel, braced myself. I hit the brakes.

Q. Did you ever see the car that hit you prior to the point in time that you hit?

A. No, I didn't.

Q. Did you ever put your brakes on prior to the point in time that you hit?

A. No, I didn't.

Q. Do you know what your speed was at the time you were hit?

A. I really don't know, but I -- probably somewhere around 30, 35.

On cross examination, plaintiff was questioned concerning her statements at the scene of the accident to the investigating officer Duncan:

3

Q. Now, you heard Officer Duncan testify that you told him that you were stopped at the time the accident occurred, correct?

A. Yes, I heard him say that.

Q. And it's your testimony you didn't tell Officer Duncan that then?

A. I don't remember telling that, but at the time, I was so shook up --

Q. Well -- I'm sorry.

A. I don't remember telling him I stopped. I know I was telling him that the car ahead of me had stopped and I had let up. I don't remember saying I stopped to him.

Q. Well, there would be a big difference between whether a car was stopped and whether a car was going 35, wouldn't there?

A. Yes, it would.

Q. Are you confused today about whether or not you stopped that day in the left lane?

A. I, I wasn't stopped. I may have told him I was, but I wasn't stopped.

Defendant testified that at the time of the accident he was proceeding in the left-hand lane at a speed of approximately thirty miles per hour. He describes the accident as follows:

Q. Tell us, if you would, what happened.

A. Well, I didn't realize she had, like, she had stopped or slowed down, so I started slowing down.

Q. Now, you say you started slowing down. What was your speed before you started slowing down?

A. Approximately 30.

Q. And can you remember how far -- Can you estimate for us how far behind her vehicle your vehicle was?

A. I don't remember.

Q. Were you tailgating her?

A. No.

MR. WOOD: Object to leading, Your Honor.

THE COURT: Sustained.

MR. WOOD: I don't think that's appropriate.

Q. When you saw her vehicle stopped or -- did it stop?

4

A. Well, if I -- I think she was,

Q. She was stopped?

A. I think. I ain't sure.

Q. Was she going 35 miles an hour?

A. No.

Q. What did you do when you realized her vehicle was stopped or stopping?

A. I applied my brakes.

Q. What happened?

A. Well, I didn't stop, and I cut, took a right to miss her.

Q. How hard did you apply them?

A. Well, hard.

Q. Did you apply them hard at first?

A. Well, I really don't remember.

ISSUES

1. Whether there is material evidence to support the jury's verdict that plaintiff was guilty of negligence amounting to forty percent of the proximate cause of the accident.

Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict. T.R.A.P. 13 (d). The appellate court's role in reviewing jury verdicts, was succinctly stated by our Supreme Court in *Electric Power Board of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522 (Tenn. 1985):

> It is the long established rule in this state that in reviewing a judgment based upon a jury verdict the appellate courts are not at liberty to weigh the evidence to decide where the preponderance lies, but are limited to determining whether there is material evidence to support the verdict; the appellate court is required to take the strongest legitimate view of all of the evidence in favor of the verdict, to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and to discard all to the contrary. Having thus examined the record, if there be any material evidence to support the verdict, it must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury. *Crabtree Masonry Co. v. C & R Const., Inc.,* Tenn., 575 S.W.2d 4, 5 (1978); *City of Chattanooga v. Rogers,* 201 Tenn. 403, 299 S.W.2d 660 (1956); *D.M. Rose & Co. v. Snyder*, 185 Tenn. 499, 206 S.W.2d 897 (1947).

*Electric Power Bd.,* 691 S.W.2d at 526.

5

The collision in this case occurred in the left hand lane of two northbound traffic lanes on a busy thoroughfare. Plaintiff apparently told the investigating officer that she had stopped her vehicle when she was hit. At the trial, plaintiff testified that she merely slowed her vehicle because of a left turning vehicle approximately two city blocks ahead of her. Defendant also told the investigative officer that the plaintiff had stopped, but at trial testified that he really did not know if she actually stopped or slowed down. Although there appears to be some dispute as to whether plaintiff stopped or slowed down, it appears undisputed that there was no necessity for plaintiff to materially change the speed of her vehicle in this through traffic lane. From this proof, the jury could have concluded that plaintiff's act of materially changing the speed of her vehicle without any necessity to do so at this particular place where one would not reasonably contemplate traffic stopping in a through-traffic lane constituted negligence on plaintiff's part that contributed forty percent to the cause of the accident. Although very slight, there appears to be material evidence to support the jury's verdict.

We will next consider plaintiff's Issue No. 3:

> 3. The Court erred in overruling item number 14 of plaintiff's Motion in Limine and admitting the hypothetical question and answer posed to Dr. Ronald T. Zellum, M.D.

The record reflects that plaintiff was treated initially after the accident in the hospital emergency room and then apparently was seen by Dr. Card, who subsequently retired due to illness. Dr. Richard Smith, an internist, took over Dr. Card's practice, and he first saw the plaintiff on August 15, 1994, with complaints of neck pain. Dr. Smith testified that he was given a history of the motor vehicle accident in 1993 and that since that time plaintiff had neck discomfort and headaches but apparently without weakness, parathesia, or other neurologic symptom. Dr. Smith's diagnosis was muscular ligamentous injury, and he prescribed typical conservative treatment, such as muscle relaxants and pain medication. Dr. Smith opined that there was a causal relationship between the accident and the conditions for which he treated plaintiff on three occasions between August 15, 1994 and January of 1995 when he referred plaintiff to Dr. Zellum, a neurosurgeon. Dr. Smith also testified that on February 28, 1995, during an office visit for another medical condition, plaintiff told him that she had reinjured her neck, but Dr. Smith's records did not indicate when this additional injury occurred. Dr. Zellum testified that he first saw plaintiff on February 8, 1995. He testified that he ordered various

6

diagnostic tests from which he reached the conclusion of spondylitic changes in her cervical spine, and he opined that based upon her history, this pre-existing condition was aggravated by the automobile accident. Plaintiff has objected to the following hypothetical question elicited on cross examination and the answers thereto.

> Let me ask you to assume that Dr. Smith has testified he first saw Mrs. Ferrell on August 15, 1994. And that, although, she complained of neck pain and associated headaches that she related to episodes of stress, that he has testified, in his opinion, that there were no neurological findings that he made in regard to her neck, despite seeing her a number of times between August of 1994 and late December, December 30, 1994.
>
> In other words, he saw her several times. But the very first time he made any neurological findings in regard to her neck was December 30, 1994. Would it be significant to you that she saw him for numerous things in a period between August and December and made no complaints of neck pain?
>
> A. How many times do you think he saw her?
>
> Q. I'll tell you.
>
> MR. WOOD: I'm going to object to the form of the question. You're indicating significant, and I think maybe we -- you may well want to go beyond that. You may not.
>
> BY MR. ZINN:
>
> Q. Let's assume that he saw her four times between August and not counting December 30th. And there were no complaints of neck pain on any of those occasions, and no neurological findings in regard to the neck until December 30th. Of what significance would those facts be to you in regard to this lady's history and condition?
>
> A. It might imply that the patient at that time had no pain or symptoms to complaint of.
>
> Q. If, again, assuming that he made no neurological findings, she made no complaint to him of neurological signs or symptoms until December 30, 1994, would it cause you to question whether there was, in your opinion, a causal relationship between the motor vehicle accident of October 1993 and the problems for which you treated this lady surgically in February, March, 1995?
>
> A. Yes, it might.
>
> Q. And why is that?
>
> A. The continuity of her complaints for me is a very important indicator of a cause and effect relationship.

Plaintiff asserts that the hypothetical question should have been excluded because it did not contain the necessary facts, was unfairly posed, and further because the response thereto by

7

the witness was speculative.

A hypothetical question must be supported by the evidence presented at trial. ***Banks v. St. Francis Hospital***, 697 S.W.2d 340, 343 (Tenn. 1985). In ***Cortrim Mfg. Co. v. Smith***, 570 S.W.2d 854 (Tenn. 1978), the Court said:

> Counsel must be given some leeway in his choice of words in framing such questions and the matter is primarily one for the exercise of discretion by the trial judge. Moreover, the defendant had the opportunity to restate the hypothetical question on cross examination or frame other questions of his own to point out any deficiencies in the question posed by the plaintiff.

*Id.* at 856.

From our review of the record, it appears that the essential facts were included in the hypothetical question and plaintiff's counsel could have utilized re-direct examination to correct any deficiencies that he might have perceived. Plaintiff also contends that Dr. Zellum's answer to the hypothetical question was speculative and should have been stricken. We must bear in mind that this hypothetical question was asked on cross examination where Dr. Zellum had stated that he relied upon the history given to him by plaintiff as a premise for his opinion that her injuries were causally related to the accident. Under those circumstances, it was proper for the question to be asked. While Dr. Zellum's answer is inconclusive, it could be considered as casting some doubt on his previously given opinion. While doubt was cast upon the opinion, no effort was made for rehabilitation nor to elicit a less speculative answer. We do not find that the trial court abused its discretion in admitting the question and answer.

> 2. The verdict rendered by the jury was inadequate, outside the range of reasonableness and against the weight of the evidence.

As we noted in dealing with the first issue, this Court is not at liberty to weigh the evidence to decide where the preponderance lies but is limited to determining whether there is any material evidence to support the verdict. ***Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.***, 691 S.W.2d 522 (Tenn. 1985).

The medical information in this case indicates that plaintiff had other physical maladies not connected with the accident and that she incurred medical expenses in treating these maladies. The record also indicates that although plaintiff had initial medical treatment for her injuries, she apparently did not have any persistent trouble for some months after the accident. When she started seeing Dr. Smith she had intermittent problems, and during the same period

of time was having totally unrelated physical problems for which she was receiving treatment. There was some indication that plaintiff may have sustained another neck injury, but the record doesn't reveal any investigation of this other than the statement made by Dr. Smith as to what plaintiff had told him. The belated onset of neurological deficits could very possibly have influenced the jury. Clearly Dr. Zellum's opinion is based upon the history given to him by the plaintiff. He indicated that the correctness of his opinion could possibly be affected if some other facts had been known to him. The medical opinion in this case was based upon the history given by the plaintiff. If the jury questions the plaintiff's credibility, it is not bound to accept the physician's medical opinion if it is based upon the history given by the plaintiff. ***Baxter v. Vandenhovel***, 686 S.W.2d 908, 912 (Tenn. App. 1984).

Based upon the entire record in this case, we find material evidence to support the verdict of the jury.

Plaintiff's fourth issue has heretofore been answered by our consideration of the first issue. Plaintiff's last issue for review is:

> 5. The Trial Court erred in his charge to the jury as to the Defendant's duty to the Plaintiff.

Plaintiff asserts in her brief:

> The Courts charge upon the issue of the Defendant's duty (Tr. 174) begins with an assertion that the assured clear distance rule (without any explanation of what the assured clear distance rule is or was) does not apply ". . . where a driver encounters a dangerous situation which he had no reason to anticipate . . ." and proceeds to relieve the defendant of the duty to observe to his front and to maintain a safe distance between his vehicle and the vehicle to his front and to have his vehicle under control at all times.

The trial court charged the jury:

> In addition, you should consider the law on following too close. A driver is required to comply with Tennessee Code Annotated 55, dash, 8, dash, 124, which provides in part as follows: The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the conditions of the highway.
>
> He is required to drive his vehicle at a sufficient distance to the rear of the vehicle ahead so as to be able to stop in the clear space between the vehicles in case the preceding vehicle is stopped with due care.
>
> The assured clear distance rule does not apply where the driver

9

encounters a dangerous situation which he had no reason to anticipate, and the required standard related to following too close is then up to the judgment of the jury.

We find the court's instruction to be correct, and if plaintiff felt that the charge was incomplete, she should have presented a special request for instruction to complete the charge.

The judgment of the trial court is affirmed, and this case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**

10