# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 30, 2015 Session

## NANCY F. BROWN v. NANCY MERCER-DEFRIESE ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 12C171     W. Jeffrey Hollingsworth, Judge**

_____

### No. E2015-00755-COA-R3-CV-FILED-JANUARY 25, 2016

_____

Nancy F. Brown (Plaintiff) was walking through and contemplating the rental of a house owned by Nancy Mercer-Defriese and Spencer Defriese (Defendants) when she tripped over a three-inch threshold or step in the doorway between two rooms. She brought this premises liability action, alleging the step was an unreasonably dangerous and defective condition that caused her fall and resulting injuries. During the jury trial that followed, Plaintiff and Defendants presented the testimony of experts. Plaintiff's expert opined that the step was a "trip hazard." One of the Defendants' experts agreed that the step was a trip hazard, while the other stated that "all stairs are trip hazards." Plaintiff and Defendants each presented photographs of the doorway showing that the step and the floors on either side of the three-inch change in elevation are in a very similar color. The trial court granted Defendants' motion for a directed verdict at the conclusion of all of the proof, finding that it was not reasonably foreseeable that Plaintiff would trip over the step; that the step was open and obvious; and that Defendants did not owe Plaintiff a duty to warn her of the condition of the step. We hold that the evidence before the trial court and now before us establishes a genuine issue of material facts as to the Defendants' negligence. Accordingly, we vacate the trial court's judgment and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated; Case Remanded for Further Proceedings**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Marvin B. Berke and Charles A. Flynn, Chattanooga, Tennessee, for the appellant, Nancy F. Brown.

W. Gerald Tidwell, W. Adam Izell, and Todd A. Davis, Chattanooga, Tennessee, for the appellees, Nancy Mercer-Defriese and Spencer Defriese.

## OPINION

### I.

On April 4, 2011, Plaintiff was viewing Defendants' rental property in Chattanooga in order to determine if she would be interested in moving in. In an interior doorway, the difference in elevation from one floor to the floor in the adjoining room was about three inches. Various witnesses at trial described this as a "threshold," a "step," or a "stair." Generally speaking, they did not agree on which of the terms is the most correct or precise. The step was the threshold to the back part of the house, which, according to Plaintiff, contained "a small room, a laundry room and a den that went across the back of it." In touring and examining the house, Plaintiff walked to the back part of the house without incident, but did not see the step on the way back and tripped over it. She suffered serious injuries including a broken hip and femur.

Plaintiff filed this lawsuit on January 19, 2012. A jury trial took place on February 18 and 19, 2013. Plaintiff testified, and presented the testimony of professional engineer Clarkson Lee Mason. The Defendants each briefly testified. They also presented the testimony of Tim Dodd, a professional engineer, and Dallas Y. Rucker, Jr., the building official for the City of Chattanooga. Defendants moved for a directed verdict at the close of all of the proof. The trial court granted the motion, finding and holding, in part, in its judgment as follows:

> The Defendants had owned the Castle Drive residence since 2003 and had rented it to several individuals and families.
>
> Prior to the Plaintiff's fall, the Defendants were not aware of anyone falling over the step in question in this case.
>
> None of the previous tenants had complained to the Defendants about the step or stated that they thought it was dangerous.
>
> The step was framed by a doorway, indicating the transition from one room of the house to another.
>
> On one side of the step were vinyl tile squares. The step itself was constructed of pieces of wood running horizontally in the

2

door frame. On the other side of the door, there was hardwood flooring running vertically in relation to the door frame. The contrast highlighted the transition.

The step complied with the City of Chattanooga's building code applicable to one and two family residences. That code was applicable to the Castle Drive residence.

On the date of the incident, Plaintiff had traversed the step over which she fell at least once before she fell over it.

It was not reasonably foreseeable to the Defendants, under these circumstances, that the Plaintiff would trip over the step in question.

The condition of the step was open and obvious and should have been seen by the Plaintiff.

The Defendants did not owe the Plaintiff a duty to warn her of the condition of the step.

(Paragraph numbering in original omitted.) Plaintiff timely filed a notice of appeal.

## II.

The sole issue presented is whether the trial court erred in directing a verdict for Defendants.

## III.

Our standard of review of a trial court's judgment as to a motion for directed verdict has been stated by the Supreme Court as follows:

> In reviewing the trial court's decision [on] a motion for a directed verdict, an appellate court must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003). A motion for a directed verdict should not be granted unless reasonable minds could reach only one conclusion from the

3

> evidence. *Id.* The standard of review applicable to a motion for a directed verdict does not permit an appellate court to weigh the evidence. *Cecil v. Hardin*, 575 S.W.2d 268, 270 (Tenn. 1978). . . . Accordingly, if material evidence is in dispute or doubt exists as to the conclusions to be drawn from that evidence, the motion must be denied. *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995).

*Johnson v. Tenn. Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006); *see also Lake v. Memphis Landsmen, LLC*, 405 S.W.3d 47, 67 (Tenn. 2013). "Appellate courts must conduct a de novo review of a trial court's ruling on a motion for a directed verdict, applying the same standards that govern the trial court's determination." *Lake*, 405 S.W.3d at 67.

## IV.

Plaintiff's cause of action is based on her allegations of negligence. "In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: '(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.' " *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). The element of duty "is the legal obligation of a defendant to conform to a reasonable person's standard of care in order to protect against unreasonable risks of harm." *Id.*; *accord Cullum v. McCool*, 432 S.W.3d 829, 833 (Tenn. 2013). Whether a defendant owes a plaintiff a duty of care is a question of law to be determined by the Court. *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005); *see Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 820 (Tenn. 2008) ("In the end, whether a defendant owed or assumed a duty of care to a plaintiff is a question of law for the court to decide.").

In analyzing the question of duty, "the court must balance the foreseeability and gravity of the potential risk of harm to a plaintiff against the burden imposed on the defendant in protecting against that harm." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998) (citing *McClung v. Delta Square Ltd. Part.*, 937 S.W.2d 891, 902 (Tenn. 1996)). In *Rice,* the Supreme Court observed that "[a] risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Id.* (quoting *McCall*, 913 S.W.2d at 153)

4

(internal quotation marks omitted). The ***Rice*** Court provided the following guiding principles in a negligence action based on premises liability:

> In a premises liability case, an owner or occupier of premises has a duty to exercise reasonable care with regard to social guests or business invitees on the premises. The duty includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence. *See **Blair v. Campbell***, 924 S.W.2d 75, 76 (Tenn. 1996); ***Eaton v. McLain***, 891 S.W.2d 587, 593–94 (Tenn. 1994).
>
> \*       \*       \*
>
> The duty imposed on the premises owner or occupier, however, does not include the responsibility to remove or warn against "conditions from which no unreasonable risk was to be anticipated, or from those which the occupier neither knew about nor could have discovered with reasonable care." *Prosser and Keeton on Torts, supra*, § 61 at 426 [5th. ed. 1984]. In this regard, "the mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." ***Id.*** at 426–27.

***Rice***, 979 S.W.2d at 308–09 (footnote omitted). Accordingly, we have observed that,

> for an owner or occupier to be found negligent, there must be some evidence that there was a dangerous or defective condition on the premises. A jury cannot conclude that an owner or occupier failed to exercise reasonable care to prevent injury to persons on their property if there is no evidence of a dangerous or defective condition. If no dangerous or defective condition exists, an owner or occupier cannot be held liable for failing to take action in order to remedy the supposed condition.

***Nee v. Big Creek Partners***, 106 S.W.3d 650, 653–54 (Tenn. Ct. App. 2002). The Supreme Court has further held that in a premises liability case,

5

[i]n order for an owner or operator of premises to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, the plaintiff must prove, in addition to the elements of negligence, that: 1) the condition was caused or created by the owner, operator, or his agent, or 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident.

*Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). The notice requirement derives from the concept that "liability in premises liability cases stems from superior knowledge of the condition of the premises." *Goumas v. Mayse*, No. 2013-01555-COA-R3-CV, 2014 WL 1713195, at *8 (Tenn. Ct. App. E.S., filed Apr. 29, 2014) (quoting *Blair*, 130 S.W.3d at 764; internal quotation marks omitted). The notice requirement is not at issue here, because Defendants do not dispute that they knew of the condition of the step in their rental house. The fundamental issue, as we perceive it, is whether Plaintiff presented sufficient evidence from which a juror could reasonably find that the step was unreasonably dangerous or defective. Based on our review of the record, we hold that Plaintiff did present such evidence.

Mr. Mason, Plaintiff's expert witness, testified that he had been a professional engineer since 1973. Regarding the three-inch step in question, Mason testified as follows:

Q: Why is the height of this important, the height of that?

A: Well, it's important because – in my view and in some parts of the building code it represents a tripping hazard. If you don't know it's there and you're walking along or don't see it or don't perceive it, you can trip over it and fall, simple as that, and oftentimes people get injured.

\* \* \*

Q: All right. You indicated tripping hazards. Will you explain to the jury why this is a tripping hazard, this particular step?

6

A: Well, it's obviously a little bit higher – excuse me, it's a lot higher than a quarter of an inch high and *it's not going to be as obvious to anybody walking around*, especially someone walking around in a new location that's not particularly familiar with that particular residence and what may be on the floor.

And three inches certainly exceeds building code levels, building code heights for the thresholds. . . . [I]n the former photograph you can see up there that those were all – the nosing and the height of the threshold, *basically it's all the same color, it's all the same brown, not terribly different from the bar that's in front of you there* and shined and so you look down at it and maybe you don't see it to be a tripping hazard. *You just don't see anything unusual there*.

And the code typically says you should be putting something there to give warning to whomever would be there or might be looking at it, that there is something different about this thing, that you need to take notice that it's there. It's as simple as that.

(Emphasis added.)

Mason testified that he looked at six or seven publications, including several building codes, in preparing his opinion. He relied on, among other things, a publication of the Consumer Product Safety Commission (CPSC) stating that "[f]or each year since 1974, the . . . CPSC has determined that stairs, ramps and landings are among the most hazardous consumer products in the United States," and classified a step with a riser less than 6¼ inches high as "high risk."

All three of the experts were in agreement that the single three-inch step was not in violation of the International Residential Code, the building code applicable in Chattanooga to detached single family and two-family dwellings and multiple single-family dwellings not more than three stories high. They also agreed that the step would violate the International Building Code, which is applicable to larger and commercial buildings. Generally speaking, an allegedly dangerous or defective condition's compliance with a regulatory code is relevant and often probative, but not conclusive, on the question of the defendant's negligence. *See City of Elizabethton v. Sluder*, 534 S.W.2d 115, 117 (Tenn. 1976) ("compliance with the appropriate provisions of the National Electrical Safety Code . . . is not conclusive on the question of petitioners'

negligence"); ***Downs***, 263 S.W.3d at 821 n.11 ("While compliance with a statutory standard is evidence of due care, it is not conclusive. Such a standard is no more than a minimum, and it does not necessarily preclude a finding that the actor was negligent in failing to take additional precautions"); ***Surles ex rel. Johnson v. Greyhound Lines, Inc.***, 474 F.3d 288, 300 (6th Cir. 2007) (applying, under Tennessee law, the "generally accepted rule that industry standards may be proven as some evidence of care but are not conclusive on the matter"); ***Schleicher v. Founders Sec. Life Ins. Co.***, No. 01A01-9711-CV-00649, 1999 WL 64233, at *6-7 (Tenn. Ct. App. W.S., filed Feb. 11, 1999) (upholding jury verdict for plaintiff on common law negligence theory in premises liability trip-and-fall case despite defendant's compliance with Southern Standard Building Code).

Both of Defendants' expert witnesses emphasized that the step does not violate the applicable building code. However, Mr. Rucker, the Chattanooga building official, stated on cross-examination regarding the step: "[D]o I think that's a trip hazard? Yes, sir."

Plaintiff testified that she did not see the step or know it was there before she tripped on it. She stated, "I tripped over that little step, the little lip that was out there because it really was not that noticeable," and "it's really not that noticeable if you don't know it's there and it's not that high or anything, when you just take a step and you're down." When the plaintiff was presented on cross-examination with pictures of the doorway with the step, she testified:

> Q: You would admit that when you go through there and go down, which, again, down is this direction –
>
> A: Uh-huh.
>
> Q: – you notice that there is a change in elevation, correct?
>
> A: Not that much difference, no.
>
> Q: Would you agree that there is a difference in the visual appearance of the step from the hardwood floor to the step?
>
> A: Yes, sir.
>
> Q: I mean, if you look down, it's pretty obvious this is here, isn't it?
>
> A: It looked that way, yes, sir.

Q: And is there not a change in the visual appearance from here to here?

A: *Not that much because it was late in the evening and it was beginning to get dark.*

(Emphasis added.)

The trial court found that the condition of the step was open and obvious. In *Coln v. City of Savannah*, the Supreme Court examined and modified the traditional rule that "a premises owner has no liability for injuries sustained from dangers that were obvious, reasonably apparent, or as well known to the invitee [or licensee] as to the owner." 966 S.W.2d 34, 40 (Tenn. 1998), overruled in part on other grounds by *Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000) (brackets in original; internal quotation marks omitted). The High Court stated:

> [T]he manifest trend of the courts in this country is away from the traditional rule absolving, ipso facto, owners and occupiers of land from liability for injuries resulting from known or obvious conditions.
>
> *      *      *
>
> [T]he premises owner's duty exists if the harm can or should be anticipated notwithstanding the known or obvious danger:
>
> > Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. . . .
>
> Restatement (Second) of Torts, § 343A (comment f). As the Michigan Supreme Court has said: "If the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the [defendant] is required to undertake reasonable precautions [and] the issue then . . . is for the jury to decide."

9

*Id.* at 41 (internal quotation marks and citations omitted; brackets in original).  The ***Coln*** Court concluded:

> Whether the danger was known and appreciated by the plaintiff, whether the risk was obvious to a person exercising reasonable perception, intelligence, and judgment, and whether there was some other reason for the defendant to foresee the harm, are all relevant considerations that provide more balance and insight to the analysis than merely labeling a particular risk "open and obvious."  In sum, the analysis recognizes that a risk of harm may be foreseeable and unreasonable, thereby imposing a duty on a defendant, despite its potentially open and obvious nature.
>
> \*       \*       \*
>
> That a danger to the plaintiff was "open or obvious" does not, ipso facto, relieve a defendant of a duty of care.  Instead, the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. . . . [I]n short, if the foreseeability and gravity of harm posed from a defendant's conduct, even if "open and obvious," outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care.

*Id.* at 42–43.

In this case, we have reviewed the photographs entered into evidence.  Two of them were taken by Defendants' attorney.  Two others were included as part of the inspection report of defense expert and professional engineer Dodd.  The flooring of the lower room is some kind of tile squares.  The area with the three-inch "lip" or small step is a threshold made of hardwood that appears to be around twelve to fifteen inches wide.  The flooring of the upper room consists of hardwood strips that run perpendicular to the threshold and are a slightly darker shade of brown.  In all of the photographs, the coloring of both the tile floor and the threshold is a brown that is, arguably, nearly identical.  There is evidence in the record suggesting no clear visual contrast between the lower floor and the threshold that is elevated three inches higher.  Defense expert Rucker recognized this fact in testifying that the step does not "have an obvious visual cue

10

provided." Plaintiff's expert Mason observed in his testimony that "basically it's all the same color, it's all the same brown." Moreover, the photographs are well lit; Plaintiff testified that at the time she tripped "it was beginning to get dark," leading to a rational inference that the step may have been less visible under the darker conditions when she fell. In short, from the proof presented, reasonable minds can differ on whether the condition of the step was open and obvious. Similarly, a trier of fact could reach more than one conclusion as to whether it was reasonably foreseeable under the circumstances presented that a person unfamiliar with the house could trip over such a step.

Defendants rely upon *Norfleet v. Pulte Homes Tennessee Limited Partnership*, No. M2011-01362-COA-R3-CV, 2011 WL 5446068 (Tenn. Ct. App. M.S., filed Nov. 9, 2011), in which this Court affirmed summary judgment in a trip-and-fall premises liability action, stating as follows:

> Although premises owners owe a duty to warn of "latent or hidden dangers," courts have repeatedly held that stairs and steps in homes "are not inherently dangerous" in and of themselves. As the Supreme Court explained in *Eaton* [*v. McClain*, 891 S.W.2d 587 (Tenn. 1994)], stairs in a home are not inherently dangerous because they are a common feature of many homes. . . . Because steps and stairs in homes are *not* inherently dangerous, our Supreme Court held that the plaintiff in such cases must "submit legally sufficient evidence as to the duty element" to establish the essential element that a duty is owed. *Eaton*, 891 S.W.2d at 595.

2011 WL 5446068, at *3 (emphasis in original). The *Norfleet* Court, recognizing that "*[t]here are circumstances in which stairs or steps may constitute dangerous conditions that give rise to a duty to warn*," *id.* at *6 (emphasis added), concluded:

> Stairs and steps are a common feature in homes and are not inherently dangerous in and of themselves; as a consequence, the mere existence of the step from the foyer to the living room does not constitute a dangerous condition. . . . Accordingly, unless Ms. Norfleet satisfied her burden to "submit legally sufficient evidence as to the duty element of her claims of negligence" no duty existed. *Eaton* at 593. She did not. Therefore, as a matter of law, Ms. Norfleet failed to establish an essential element of her claim, that of a duty owed to her by Defendant as it pertained to the step from the foyer to the sunken living room.

11

*Norfleet*, 2011 WL 5446068, at *3.  *Norfleet* observes that, because steps are not *inherently* dangerous, a plaintiff cannot establish a "defective or dangerous condition" *merely* by alleging that he or she tripped or fell on a step or set of stairs, without further proof.  Summary judgment was affirmed in *Norfleet* because, as expressly stated by this Court, plaintiff failed to provide proof establishing the essential element of duty.  As we have discussed, there is no such failure of proof here.  We hold that the evidence presented, including testimony of experts on both sides that the step was a "trip hazard," Plaintiff's testimony, the unusually short size of the single step between two interior rooms which expert Mason classified as dangerous and "high-risk," and the photographs of the accident scene – establish that reasonable minds could differ on the question of Defendants' negligence, and thus, a jury question is presented.  We consequently vacate the trial court's directed verdict.

## V.

The trial court's judgment granting Defendants a directed verdict is vacated, and this case is remanded for further proceedings.  Costs on appeal are assessed to the appellees, Nancy Mercer-Defriese and Spencer Defriese.

_____
CHARLES D. SUSANO, JR., JUDGE

12